**UNITED STATES of America, Plaintiff,**

**v.**

**PEPPER'S STEEL AND ALLOYS, INC.; Florida Power and Light Company; Norton Bloom; Thomas A. Curtis; William Payne; Flora Payne; and Lowell Payne, Defendants.**

Nos. 83–1717–CIV–EPS, 85–571–CIV–EPS.

United States District Court, S.D. Florida, Miami Division.

March 26, 1987.

As Amended April 23, 1987.

---

F. Henry Habicht, Asst. Atty. Gen., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Leon B. Kellner, U.S. Atty., S.D. Fla. by Marc Fagelson, Asst. U.S. Atty., S.D. Fla., Thomas L. Adams, Jr. Asst. Adm'r for Enforcement & Compliance Monitoring, U.S. E.P.A., Washington, D.C., Lee A. DeHihns, Jack Ravan, Regional Adm'r, U.S. E.P.A., Region IV, Atlanta, Ga., for plaintiff U.S.

David B. Weinberg, Fox, Weinberg & Bennett, Washington, D.C., John Barkett, Steel, Hector & Davis, Miami, Fla., for defendant Florida Power & Light Co.

John Wilcox, Tampa, Fla., for defendants Curtis & Payne (all).

R. Hugh Lumpkin, Miami, Fla., for defendant Pepper's Steel.

Paul Ezatoff, Jr., Deputy Gen. Counsel, Tallahassee, Fla., for plaintiff-intervenor Florida Dept. of Environmental Regulation.

Robert A. Duvall, Asst. Co. Atty., Miami, Fla., Robert R. Homiak, Environmental Enforcement Section Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Pamela Sbar, Office of Enforcement & Compliance Monitoring, U.S. E.P.A., Washington, D.C., for amicus curiae Dade County Dept. of Environmental Resources Management.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ENTRY OF CONSENT DECREE

SPELLMAN, District Judge.

This CAUSE comes before the Court on Plaintiff's, UNITED STATES OF AMERICA, Motion for Entry of Consent Decree filed in the above-styled case. This action was originally filed by the United States of America at the request of the Administrator of the Environmental Protection Agency ("EPA"), pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., against the Defendants, PEPPER'S STEEL AND ALLOYS, INC., FLORIDA POWER AND LIGHT COMPANY, NORTON BLOOM, THOMAS A. CURTIS, WILLIAM PAYNE, FLORA PAYNE and LOWELL PAYNE. The Complaint originally sought injunctive relief to gain access to the property which is the subject matter of this Consent Decree, to arrange for the removal of polychlorinated biphenyls ("PCB's") which had been discovered on the property and which were being released into the underlying groundwater, threatening it with serious contamination. PCB's have been designated as hazardous substances within the meaning of § 101(14) of CERCLA. The underlying area is also quite precious, insofar as it comprises the Biscayne Aquifer, the primary source of drinking water for southeast Florida. The original action was later consolidated with case number 85–571–CIV–EPS, which is an action under § 107 of CERCLA wherein the Government is seeking recovery of the costs expended by the EPA during the immediate removal phase of the cleanup at the site.

Perhaps more than any other Order issued by this Court, this one is truly entered on behalf of the public; in particular the citizens of Dade and Broward counties, who are the primary beneficiaries of the united efforts of the parties herein. The Court takes this opportunity to express thanks to the UNITED STATES, FLORIDA POWER AND LIGHT COMPANY and all the other named parties and signatories to the Consent Decree for their ef-

forts and for their ability to place by the wayside their individual desires for the sake of a more universal result. This record reflects a result that comes from cooperation, dedication and, above all, a firm desire to avoid time consuming expensive litigation. This is a case where the public's interest was placed paramount to the private interests of those called upon to engage in the battle.

The Consent Decree in this case is a particularly favorable result, especially when one considers the magnitude of the problems presented by hazardous waste sites throughout the United States. There are presently 25,875 potentially hazardous waste sites in the United States, of which 887 are currently on the National Priority List. Environmental Protection Agency, *The Superfund Progress Report*, December 31, 1986. The site involved in this case is but one of those 887. Of the 887 sites on the National Priority List, 119 civil actions have been filed by the Government under § 107 of CERCLA, and 93 have been filed pursuant to § 106 of CERCLA. *Id.* Admittedly, some of the actions filed pursuant to § 106 also involve actions under § 107, but that does not negate the fact that the Government is actively addressing numerous hazardous waste sites simultaneously by civil actions, not to mention those sites that are being addressed administratively. Many of the civil actions filed result in lengthy litigation, thus prolonging the effectuation of remedial action and clouding the true issue, which should always be the protection of the environment and its inhabitants.

Prolonged litigation typifies a situation where private interests and concerns obfuscate our responsibility to one another as citizens of this world to address and rectify the harms associated with contaminants. Such is not the case here, and the parties are commended for this result. If every court before whom these matters were filed could have the opportunity of working with parties and lawyers of the quality that this Court has had, the concerns for the environment and whatever pollution might have occurred as a result of the dispensing of hazardous substances would be easily

resolved. The attached Consent Decree should first and foremost be a model to others of what can be achieved through the efforts of the Government and private parties to accomplish and alleviate what this Court perceives to be one of the most dangerous conditions a community can be confronted with, i.e., the loss of the aquifer in south Florida and the drinking water of this area.

One cannot begin to imagine the countless hours of work expended by the parties herein and the huge sums of money that were spent without concern for its ultimate recovery. This result reflects that keen sense of public awareness which is alive in this community. The requisite 30 day comment period has come and gone without a single objection being raised by the public. This Court can only attribute that result to the quality of work that was presented to the public to begin with.

Finally, it is important to note that the Consent Decree and the actions performed in accordance with it have a significance beyond that which has already been mentioned. A representative from the EPA announced in open Court that this project incorporates a new application of existing technology—the use of a solidification technology for metals as well as organics. This approach, we are told, is expected to have widespread use in the future. Accordingly, the EPA as well as other agencies and parties throughout the United States are monitoring the progress here in Miami.

With great pleasure this Court affixes its signature to this Consent Decree. The Motion is GRANTED.

## CONSENT DECREE

Whereas, the United States of America ("United States" or "Plaintiff"), acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this case on July 11, 1983, and an amended complaint on March 5, 1985, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, seeking to

require defendants to undertake response actions at the Pepper's Steel site, located in Medley, Florida, and seeking to secure reimbursement of funds expended by the United States for investigations, clean-up activities, enforcement activities, and other actions at the Pepper's Steel site; and

Whereas, Dade County Department of Environmental Resources Management ("DERM") has been granted the status of amicus curiae and consents to be bound by the terms of this Decree; and

Whereas, the Court has encouraged the parties to enter into settlement discussions and the Settling Parties, in a spirit of compromise, have put aside their legal and equitable claims and defenses and worked cooperatively to resolve their disputes in a fair and equitable fashion, without litigation; and

Whereas, the Court finds that the partial settlement of this lawsuit without costly and protracted litigation is in the public interest; and

Whereas, the Plaintiff contends that there is a migration of hazardous substances from the site and desires that the Settling Defendant implement a remedy to prevent such alleged migration; and

Whereas, Defendant Florida Power & Light Co. ("FPL") denies the existence of such migration, but similarly desires to see a remedy implemented to resolve the disputes between the parties;

Whereas, all Settling Parties, by and through their representatives, have each agreed to the execution of this Consent Decree;

NOW THEREFORE, without any admission of any fact or law, except as expressly stated in Section II hereof, or of liability of any party to any other party or to any other person, and upon the express consent of the Settling Parties hereto, it is ORDERED, ADJUDGED and DECREED as follows:

## I

### ADMISSIBILITY OF THIS CONSENT DECREE

The Settling Parties have entered into this Consent Decree with the express understanding that it is the product of extended and comprehensive settlement negotiations. The Court expressly finds that the Settling Parties participated in those negotiations and have executed this Consent Decree in good faith, and that neither this Consent Decree, its attachments, nor the fact of its execution or negotiation shall be admissible against any signatory in any judicial or administrative proceeding other than one to enforce the terms of this Consent Decree. By entering this Consent Decree, FPL makes no admission as to any of the allegations set forth in Plaintiff's Complaint or Amended Complaint.

## II

### JURISDICTION

This Court has subject matter jurisdiction over this matter and has personal jurisdiction over the Parties to this Consent Decree. The Settling Parties agree to be bound by the terms of this Consent Decree and not to contest its validity in any subsequent proceeding arising from it.

## III

### PARTIES BOUND

This Consent Decree shall apply to and be binding upon FPL, its officers, directors, agents, successors, and assigns; upon the United States on behalf of EPA and the U.S. Department of the Interior; and upon DER and DERM as the entities primarily responsible for enforcement of environmental laws within their jurisdictions. Each such agency has fully considered this Consent Decree and concluded that its entry is in the interest of all citizens and the environment in its respective jurisdiction. Each undersigned representative of each party certifies that he is fully authorized to enter into this Consent Decree and to execute and legally bind such party to this document. FPL shall provide a copy of this Consent Decree to each contractor or subcontractor retained to perform the remedial measures that are set forth herein.

## IV

### DEFINITIONS

The following definitions shall apply in this Consent Decree:

A) "Pepper's Steel Site" or the "Site" means the three adjacent parcels of land in the Town of Medley, Florida, each of approximately 10 acres, owned or previously owned by the Property Owners (as defined below). The site is located at and about 11100 North-West South River Drive. The site is approximately bounded by 109th Street, the Miami Canal, 115th Street, and the Florida East Coast Railway, and is more fully described in the Work Plan.

B) "Hazardous substances" shall be used as that term is defined in 42 U.S.C. § 9601(14).

C) "Release" shall be used as that term is defined in 42 U.S.C. § 9601(22).

D) "Response costs" means all administrative, investigatory, remedial, oversight, and removal costs incurred by any Settling Party at the Pepper's Steel Site, as well as enforcement costs incurred by the United States.

E) "National Oil and Hazardous Materials Contingency Plan" ("National Contingency Plan" or the "NCP") shall be used as that term is defined in 42 U.S.C. § 9605.

F) "Work" means the actions that FPL is required to take at the Pepper's Steel Site as set forth in the Work Plan attached as Appendix A of this Consent Decree, and made a part of this Consent Decree as if fully set forth herein.

G) "Property Owners" means defendants William Payne, Lowell Payne and Flora Payne (jointly referred to as "Payne"), Thomas Curtis, and Norton Bloom.

H) "Settling Parties" means the United States, DER, DERM and FPL.

I) "Parties" means the United States, DER, DERM, and all Defendants.

J) "Settling Defendant" means FPL.

K) "Governmental Party" means the United States government; the State of Florida; and Dade County; and each such authority's agencies, departments, agents, contractors and employees.

## V

### OBJECTIVES OF THIS CONSENT DECREE

A) The objectives of this Consent Decree are to remedy alleged environmental conditions at the Site through the implementation of the Work and to resolve all cost recovery claims or other claims pertaining to environmental conditions at the Site that exist or could be asserted among and between the United States, DER, DERM, and FPL.

B) FPL shall notify EPA, DER and DERM promptly upon completion of the Work set forth in the Work Plan. If EPA agrees that the Work has been completed in accordance with the Work Plan, it within thirty (30) days shall certify that fact. If EPA believes that the Work has not been completed in accordance with the Work Plan, it shall specify any additional work that EPA believes must be performed to satisfy the requirements set forth in the Work Plan. If FPL disagrees with EPA's determination, the Dispute Resolution provisions of Paragraph XIV of this Consent Decree shall be invoked.

## VI

### RESPONSIBILITIES OF FPL

A) FPL shall be responsible for completing the Work as specified in the Work Plan in accordance with the schedules and obligations set forth therein. All tasks certified by EPA as having been completed in accordance with the Work Plan shall be considered completed in a manner that is consistent with the National Contingency Plan.

B) FPL shall perform the Work required by this Consent Decree in compliance with all applicable federal, State, and local laws, and all regulations promulgated thereunder except that no federal, DER, or local permits shall be required. Furthermore, nothing in this subparagraph shall be deemed

to modify any provision of the NCP that pertains to permits.

## VII

## INDEMNIFICATION

A) FPL agrees to indemnify and save and hold harmless the United States government, the State of Florida, and Dade County, their agencies, departments, agents, contractors and employees, from any and all claims or causes of action arising from or on account of acts or omissions of FPL, its officers, employees, receivers, trustees, agents, contractors or assigns, in carrying out the activities pursuant to this Consent Decree. The United States, EPA, DER, and DERM are not parties to any contract involving FPL with respect to the Pepper's Steel Site. The Settling Parties agree that the acts or omissions of FPL or its contractors in performing the Work or in carrying out activities pursuant to this Decree shall not in any manner or for any purpose be considered the acts or omissions of the United States Government, the State of Florida, Dade County, or their agencies, departments, contractors or employees.

## VIII

## REIMBURSEMENT

A) Within fourteen (14) days of a demand by EPA and following EPA certification of the completion of all activities identified in Task 3.1 of the Work Plan, FPL shall pay to the United States in reimbursement of response and remedial planning costs incurred by the United States with respect to the Pepper's Steel Site prior to July 1, 1986, a sum equal to two hundred thousand dollars ($200,000.00) less all costs incurred by FPL in undertaking any activities identified in Task 3.1 of the Work Plan, up to a maximum amount of two hundred thousand dollars. Payment shall be made by certified or cashier's check, payable to the EPA "Hazardous Substance Response Trust Fund", and shall be delivered to U.S. EPA Superfund, P.O. Box 371003 M, Pittsburgh, Pennsylvania 15251. Notice of payment shall be filed with the Court and served on all Settling Parties, together with an accounting of all costs incurred by FPL in executing Task 3.1 of the Work Plan.

B) In addition to the amounts identified in subparagraph A herein, within thirty (30) days of presentment to FPL by EPA of a statement describing the costs EPA incurred in connection with EPA's oversight of FPL's performance of the Work, FPL shall, reimburse the United States for such costs up to a total amount of one hundred thousand dollars ($100,000.00). Payment shall be made by certified or cashier's check and delivered to the EPA "Hazardous Substance Response Trust Fund" as set forth in Subparagraph A herein. FPL shall not be required to reimburse any EPA oversight costs in excess of one hundred thousand dollars ($100,000.00).

C) Within fourteen (14) days of the entry of this Consent Decree, FPL shall pay a total of fifteen thousand dollars ($15,000.00) to the Florida DER. Payment shall be made by certified or cashiers' check, made payable to DER, and delivered to the address set forth at Paragraph XIX herein.

D) Within fourteen (14) days of the entry of this Consent Decree, the FPL shall pay a total of sixty-four thousand dollars ($64,000.00) to the DERM. Payment shall be made by certified or cashiers' check, made payable to DERM, and delivered to the address set forth at Paragraph XIX herein.

## IX

## REMEDIAL PROJECT MANAGER

A) EPA shall designate a Remedial Project Manager ("RPM") to observe and to monitor the progress of the Work and to coordinate communication between EPA, DER, DERM, FPL and other Defendants. The RPM shall have the authority vested in On-Scene Coordinators by 40 C.F.R. § 300 *et seq.* including the authority to order suspension of the Work if necessary to protect human health or the environment or to prevent a release of hazardous substances into the environment at or from the Pepper's Steel site.

B) In the event the RPM does require suspension of the Work, he shall promptly

confer with FPL, DER, and DERM to determine how to perform the Work in a manner that is consistent with this Consent Decree and that protects human health or the environment. If there is any disagreement between the RPM and FPL, the matter shall be resolved in accordance with the dispute resolution provisions of Paragraph XIV.

C) The RPM may designate a reasonable number of other representatives from EPA, DER, DERM or their contractors or consultants to observe and monitor the progress of any activity undertaken in furtherance of or pursuant to this Consent Decree. These observers shall not interfere with the performance of the Work, and shall comply with the Health and Safety Plan, which is attached to the Work Plan.

## X

### RETENTION OF DOCUMENTS

A) Until such time as the solidification and/or stabilization requirements set forth in the Work Plan have been completed and certified complete by EPA, FPL shall submit written reports to EPA as specified in Section 4 of the Work Plan.

B) The Parties shall preserve, and shall instruct their contractors and consultants to preserve all records, documents and information of whatever kind, nature or description relating to the performance of the remedial activities at the Pepper's Steel Site until five years after completion of the Work. At any time during this period, any Settling Party may request and receive from any other Settling Party originals or true copies of all such records, documents, and information which are not privileged or otherwise exempt from disclosure.

## XI

### SITE ACCESS/SPLIT SAMPLES

A) The Settling Parties and their authorized representatives, consultants, and contractors shall have access to the Pepper's Steel Site for any action required by the Consent Decree or Work Plan. EPA's right of access under this Decree shall be in addition to, and not in substitution for, EPA's right of entry and access under applicable federal laws.

B) FPL, or its designated representatives, shall conduct all sampling and analysis required by this Consent Decree pursuant to EPA protocols and chain of custody procedures, or as otherwise specified in the Work Plan. All analyses shall be performed by one of the laboratories designated in the Work Plan or as otherwise approved by EPA.

C) FPL shall provide EPA with splits of all samples requested by EPA during the performance of the Work required by this Consent Decree. FPL shall give EPA at least seven (7) days notice of any sampling to be conducted. FPL shall give EPA thirty (30) days notice prior to disposing of any samples, and allow EPA to take possession of such samples if EPA so chooses.

## XII

### CHANGES TO GROUNDWATER AND SURFACE WATER MONITORING REQUIREMENTS

A) Upon completion of the first three years of groundwater and surface water monitoring, and every three years thereafter, FPL may request that the Regional Administrator modify or terminate the provisions of the monitoring program. Such request shall be in writing and shall state fully the reasons for such modification or termination. FPL shall provide a copy of such request to the United States, DER and DERM as provided in Paragraph XX. The Regional Administrator may grant such request if the monitoring system, as modified, will be adequate to detect the presence of hazardous substances and to assess conditions at the Site and will protect human health or the environment, or if no further monitoring is needed to achieve these goals.

B) The Regional Administrator may, at any time, require that FPL reinstate any provision of the groundwater or surface water monitoring program deleted pursuant to subparagraph (A), if such reinstate-

ment is necessary to detect the presence of hazardous substances, assess conditions at the site, or to protect human health or the environment.

## XIII

### FORCE MAJEURE

A) For purposes of this Consent Decree, "Force Majeure" is defined as any event arising from causes beyond Defendants' control which delays or prevents the performance of any obligation under this Decree, including but not limited to Acts of God or War, judicial or legislative actions which prevent the implementation of the Work, lack of provision of access, failure of the property owners to comply with the Court's Order of October 10, 1986; any suspension of Work ordered by the RPM pursuant to paragraph IX, and labor strikes. "Force Majeure" shall not include increased costs of performance of any activity required by this Decree, the financial inability of FPL to perform its obligations under the Decree, or changes to the law occasioned by the 1986 amendments to CERCLA.

B) When circumstances are occurring or have occurred which may delay the completion of any of the Work or delay access to the Site or to any property on which any Work is to be performed, whether or not due to a "force majeure" event, FPL shall notify all other Settling Parties by telephone within twenty-four (24) hours, and shall within thirty (30) days supply written notice to all other Settling Parties, specifying the reason(s) for and anticipated duration of such delay, the measures taken and to be taken by FPL to prevent or minimize the delay, and the timetable for implementation of such measures. Failure to notify EPA shall constitute a waiver of any claim of "force majeure".

C) If EPA determines that a delay is or was attributable to a "force majeure" event, the Settling Parties shall modify the schedule of work to be performed to provide such additional time as may be necessary to allow the completion of the specific phase of the work and, if appropriate, any succeeding phase of the work affected by such delay.

D) If FPL disagrees with EPA's determination regarding whether the reason for a delay was a "force majeure" event, or whether the duration of the delay is or was warranted under the circumstances, the Dispute Resolution provisions of Paragraph XIV shall apply.

## XIV

### DISPUTE RESOLUTION

A) Unless otherwise provided in this Consent Decree, any dispute which arises under this Consent Decree shall in the first instance be the subject of informal negotiations. Any agreement between the Settling Parties shall be reduced to writing and, upon approval by the Court, shall be considered a modification under Paragraph XXI of this Consent Decree. If the United States and FPL cannot resolve the dispute within thirty (30) days, any Settling Party may move the Court for appropriate resolution. A Settling Party may move the Court in less than thirty (30) days if the exigencies so require.

B) In the event of a dispute between the FPL and EPA, FPL shall have the burden to demonstrate that the position proposed by EPA is arbitrary and capricious.

## XV

### COVENANT NOT TO SUE

A) Upon completion by FPL of all Work required of it by this Consent Decree and the Work Plan and EPA certification thereof, and the payment to a Governmental Party of any amount required in Paragraph VIII herein, that Governmental Party covenants not to take any civil judicial or administrative action against FPL for any "covered matters" as defined in Subsection B below.

B) "Covered Matters" shall include any and all liability arising from work performed in accordance with this Consent Decree; all claims for damages to natural resources available to the United States, DER or DERM as of the entry of this

Consent Decree; all claims for Response Costs or damages of any sort incurred by the United States, DER, DERM or FPL, as of the entry of this Consent Decree; all other claims arising from or relating to the site including but not limited to claims as to future response costs; all claims for future damages (except claims for damages to natural resources); and monitoring or technical oversight costs incurred by EPA, DER, DERM, or FPL.

C) This Section XV does not constitute a release as to any non-settling parties, but is rather a covenant not to sue FPL. Accordingly, the parties intend that this Consent Decree will be dispositive of each and all of FPL's duties and liabilities with respect to any other person who makes a claim for any covered matters.

D) In any action brought by the United States, DER, DERM or FPL or any action brought against an allegedly responsible party, with respect to "covered matters," the Settling Parties hereto agree and this Court hereby finds and concludes that the principles of Section 4 of the Uniform Contribution Among Tortfeasors Act (1955) (UCATA) shall govern, and that, accordingly, FPL shall not be liable to make contribution to any person for "covered matters."

(E) FPL agrees that any subsequent claims in regard to covered matters by it against non-settling defendants must be subordinated to the Plaintiff's claims against these non-settling parties. In no event will Plaintiff defend, or provide direct indemnification of any Settling Defendant. This clause does not constitute an agreement by FPL to subordinate any claims FPL has as an insured, or against any supplier of electrical equipment to FPL.

(F) These Covenants Not To Sue shall not apply to FPL if it fails to complete the Work in accordance with this Consent Decree and the Work Plan.

(G) Notwithstanding any other provisions of this Decree, the United States reserves the right to institute a new action, or to seek modification of this Consent Decree if necessary to do so, in order to compel FPL either to take additional re-

sponse measures at the site or to reimburse Plaintiff for additional cleanup costs if:

(1) there is a release or a substantial threat of a release of hazardous substances at or from the Site which may present an imminent and substantial endangerment to the public health or welfare or the environment and which arises from previously unknown or undetected conditions, and/or

(2) Plaintiff receives new information, concerning the nature of the substances at the Site or appropriateness of past response actions which indicates that site conditions may present an imminent and substantial endangerment to the public health or welfare or the environment because of the release or threat of release of hazardous substances from the Site.

## XVI

## RESPONSE AUTHORITY

Except as set forth in Paragraph XV, nothing in this Consent Decree shall be deemed to limit the response authority of EPA under 42 U.S.C. § 9604, or the authority of the United States under 42 U.S.C. § 9606 or § 9607 except as to matters covered by this Consent Decree, or to alter the applicable legal principles governing the judicial review of any action taken by EPA pursuant to such authority.

## XVII

## STIPULATED PENALTIES

A) Unless excused by the provisions of paragraph XIII or XIV of this Consent Decree, FPL shall, within seven (7) days of a demand by the United States, be liable to pay a stipulated penalty in accordance with the schedule set forth below for any failure to comply with any of the requirements imposed upon it by this Consent Decree. Such payment shall be excused if the noncompliance is cured within seven (7) days of receipt of such demand.

| Period of Failure to Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 30th day | $ 500.00 |
| 31st day and beyond | $2,500.00 |

B) Stipulated penalties under this paragraph shall be paid by certified check made payable to the "Treasurer of the United States", and transmitted to the United States Attorney's Office, 155 S. Miami Avenue, Miami, Florida 33103. FPL shall provide notification to the United States of such payment in accordance with the provisions of Paragraph XIX of the Consent Decree.

C) Stipulated penalties shall not accrue during such time as the Dispute Resolution provisions of Paragraph XIV herein have been invoked, unless the Court finds that FPL has not acted in good faith in invoking the Dispute mechanism, or in forcing Plaintiff to do so.

D) The stipulated penalties set forth above shall be in addition to any other remedies or sanctions which may be available to the United States by reason of FPL's failure to comply with the requirements of the Consent Decree.

### As to the United States:

Assistant Attorney General
Land and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530
Ref: DOJ 90–11–2–62A

Director, Waste Management Division
Attn: Pepper's Steel Remedial Project
   Manager
U.S. Environmental Protection Agency
345 Courtland St., N.E.
Atlanta, Georgia 30365

### As to DER:

Bureau Chief
Bureau of Operations
Attn: Pepper Steel Project Manager
Department of Environmental Regulation
2600 Blair Stone Road
Tallahassee, Florida 32301

### As to DERM:

William Brant
Dade County Department of
   Environmental Resources Management
Metro-Dade Center, 13th Floor
111 N.W. First St.
Miami, Florida 33130

## XVIII

## PUBLIC INFORMATION

All data, factual information and documents submitted by FPL to EPA pursuant to this Consent Decree shall be subject to public inspection unless identified by Defendant as confidential pursuant to 40 C.F.R. Part 2. Data, documentation or factual information claimed as confidential will be disclosed only as provided in EPA regulations. FPL shall not assert claims of confidentiality regarding any hydrogeological or chemical data or any other scientific or engineering tests or data.

## XIX

## FORM OF NOTICE

When notification to the United States EPA or the Defendants is required by the terms of this Consent Decree, it shall be in writing and addressed to:

### As to the Defendant FPL:

David Weinberg, Esq.
Fox, Weinberg & Bennett
1714 Massachusetts Ave., N.W.
Washington, D.C. 20036

John Barkett, Esq.
Steel, Hector & Davis
4000 Southeast Financial
   Center
Miami, Florida 33131

### As to Defendants Payne and Curtis:

John Wilcox, Esq.
Morris, McMichael, Wilcox &
   Mora, PA
Suite 1870 Barnett Plaza
101 E. Kennedy
Tampa, Florida 33602

### As to Defendant Bloom:

R. Hugh Lumpkin, Esq.
Keith, Mack, Lewis & Allison
111 N.E. First St.
Miami, Florida 33132

## XX

### CLAIMS AGAINST THE FUND

In consideration of the entry of this Consent Decree, FPL agrees not to make any claims, demands or causes of action, including those which may lie pursuant to Section 112 of CERCLA, 42 U.S.C. § 9612, or any other provision of law, directly or indirectly, against the Hazardous Substance Response Trust Fund established by CERCLA, or any other claim against the United States for expenses related to this action and this Consent Decree. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a CERCLA claim within the meaning of 40 C.F.R. § 300.-25(d). This Court hereby finds, however, that all expenditures made by Defendant FPL to produce the RI/FS dated October 1, 1983, and to assist in the choice of remedy at the site, and all expenditures made by FPL to comply with this Consent Decree (including but not limited to activities identified in Task 3.1 of the Work Plan), were made and shall be made consistent with the National Contingency Plan and thus may be recovered, to the extent consistent with the proofs, from persons not provided a covenant not to sue by this Decree and found to be within the scope of Section 107 of CERCLA or otherwise liable to FPL.

## XXI

### MODIFICATION

The parties hereto may jointly agree in writing to modify any work plans, schedules, or requirements contained in Appendix A herein.* No other modification shall be made to this Consent Decree without written notification to and written approval of the United States, the representatives of the Settling Defendants, and the Court. No oral modification of this Consent Decree shall be effective as to the United States.

## XXII

### RETENTION OF JURISDICTION

This Court shall retain jurisdiction of this Consent Decree for purposes of insuring compliance with its terms and conditions.

*Ed.Note: The appendix was not included for

## XXIII

### RETENTION OF RECORDS

All parties shall preserve all records and documents now in their possession or control which relate to the Pepper's Steel Site despite any documents retention policy to the contrary for five years after the completion of the remedial activities set forth at Paragraph IV of this Decree. Results of groundwater monitoring shall be retained for the entire period that such monitoring is required under this Consent Decree.

## XXIV

### EFFECTIVE DATE

This Consent Decree shall be effective upon the date of its entry by the Court.

## XXV

### SEVERABILITY

If any provision of this Consent Decree, or the application of any provision of the decree to any person or circumstance is held invalid, the application of such provision to other persons or circumstances, as well as the remaining provisions of this decree shall not be affected.