UNITED STATES of America and The State of Washington, Plaintiffs,

v.

The WESTERN PROCESSING COMPANY, INC., et al.; The Boeing Company, et al., Defendants.

The BOEING COMPANY, Third–Party Plaintiff,

v.

A & A ANDERSON TANK SERVICE, LTD., et al., Third–Party and Cross–Claim Defendants.

AMERICAN TAR COMPANY, et al., Third–Party Plaintiffs,

v.

A & A ANDERSON TANK SERVICE, LTD., et al., Third–Party and Cross–Claim Defendants.

Jack and Leah PINCHEV, Third–Party Defendants and Third–Party Plaintiffs,

v.

UNITED STATES of America, and State of Washington, Third–Party Defendants.

Nos. C89–214M, C83–252M and C89–224M.

United States District Court, W.D. Washington, at Seattle.

Jan. 19, 1990.

William A. Gould, Perkins & Coie, Seattle, Wash., for Boeing Co.

Marcus B. Nash, Stafford, Frey, Cooper & Stewart, Seattle, Wash., for NW Steel Rolling Mills, Inc. and NW Steel Rolling Mills Liquidating Trust.

Frederick O. Frederickson, Michael J. Swofford, Graham & Dunn, Seattle, Wash., for Security Pacific Bancorporation Northwest.

Ronald A. Franz, Carney, Stephenson, Badley, Smith & Spellman, Seattle, Wash., for Liquid Waste Disposal Co.

Garmt J. Nieuwenhuis, Issaquah, Wash., pro se.

Glen Andrew Anderson, Atty. Gen.'s Office, Torts, J. Tanya Barnett, Laurie Sillers–Halvorson, Atty. Gen.'s Office, Ecology Div., Olympia, Wash., Jon Peter Ferguson, Atty. Gen.'s Office, Tort Claims Div., Seattle, Wash., for Washington State.

Susan L. Barnes, U.S. Atty.'s Office, Seattle, Wash., David W. Zugschwerdt, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., for U.S.

Peter H. Haller, Ater, Wynne, Hewitt, Dodson & Skerritt, Seattle, Wash., for Atlantic Richfield Co., Bethlehem Steel Corp., Chevron U.S.A., Inc., Flecto Coatings Ltd., John Fluke Mfg. Co., Heath Techna Aerospace Co., Morton Thiokol Inc., Pacific Pro-

pellor Inc., Safety Kleen Inc., Seattle Times Inc., Pittsburgh & Midway Coal Min. Co., Western Pneumatic Tube Co. and Nortar, Inc.

Jeffrey B. Wihtol, Lindsay, Hart, Neil & Weigler, Portland, Or., Peter H. Haller, Ater, Wynne, Hewitt, Dodson & Skerritt, Seattle, Wash., for American Tar Co.

Larry Bruce Alexander, Seattle, Wash., for Widing Transp. Inc.

John R. Allison, Betts, Patterson & Mines, Seattle, Wash., for Crosby & Overton Inc.

Lisa M. Stone, Stoel, Rives, Boley, Jones & Grey, Seattle, Wash., Kevin Q. Davis, Stephen S. Walters, Stoel, Rives, Boley, Jones & Grey and Richard D. Bach, Portland, Or., for Precision Castparts Corp., Intern. Controls Corp. and Radiation Intern.

Marc A. Bateman, Richard M. Barney, Barney & McAdams, Seattle, Wash., for Ace Galvanizing Co. and Pontius Trucking.

Richard John Watkins, Seattle, Wash., for Ryan & Haworth Co.

James Morton Beecher, Hackett, Beecher & Hart, Seattle, Wash., for RSR Corp.

Robert Farnum Bakemeier, Jeffrey Wayne Leppo, Jeanette DiScala McGraw, Bogle & Gates, Seattle, Wash., for Lockheed Shipbuilding & Const. Co., Davis Walker Corp. and McMillan Bloedel.

Clark J. Davis, Davies Pearson P.C., Tacoma, Wash., for Bayside Waste Hauling & Transp. Co.

Robert Jerome Grenier, Seattle, Wash., for Amalgamated Services Inc.

Victoria Jensen Bjorkman, Lawrence E. Hard, LeSourd & Patten, P.S., Seattle, Wash., for Union Oil Co. of Cal., GATX Tank Storage Terminal Corp., Northwest Tank Service and Canadian Forest.

Jerry H. Kindinger, Sharon J. Bitcon, Ryan, Swanson & Cleveland, Seattle, Wash., for Lee & Eastes Tank Lines, Inc., Inland Transp. Co., Inc., Pay 'N Save Corp. and South Center Oil Inc.

John P. Lycette, Jr., Seattle, Wash., for Nat. Transfer Inc.

James Morton Beecher, Hackett, Beecher & Hart, Richard Lee Sessions, Seattle, Wash., for Scott Galvanizing Co., Inc.

Benjamin Gould Porter, George, Hull & Porter, Seattle, Wash., for Color Tech Inc. and Asko Processing Inc.

Joel Sherwood Summer, Univar Corp., Legal Dept., Seattle, Wash., for Univar Corp. and Pacific Resins & Chemicals Inc.

Scott A. Smith, Short, Cressman & Burgess, Seattle, Wash., for Tree Island Steel Co. Ltd.

Terence K. McGee, Thomas Anderson Sherwood, McGee & Reno, Seattle, Wash., for Continental Can Co.

Robert J. Downey, Law Offices of John Lockie, Seattle, Wash., for Norfin Inc.

Norfin Inc., Donald L. Sneelman, c/o Herb Lakefish NF Corp., Seattle, Wash., pro se.

C. Stan Webert, Seattle, Wash., for Coastal Tank Cleaning Services Inc.

William D. Maer, Heller, Ehrman, White & McAuliffe, Seattle, Wash., for Anchor Post Products, Canron Inc. and Westak-North.

Shane Cornelius Carew, Ronald A. Franz, Carney, Stephenson, Badley, Smith & Spellman, Seattle, Wash., for Quigg Bros-McDonald Inc., Jack Pinchev and Leah Pinchev.

Preston Niemi, Seattle, Wash., for A J Zinda Co.

Jeffrey Lynn Carey, Seattle, Wash., for Pozzi Bros. and Lumber Trucking Service.

James T. Johnson, Seattle, Wash., for Tacoma Hauling Inc., Tacoma Hauling/Gunter Bros. and Tacoma Hauling/Jack Creager Trucking.

Gary Michael Abolofia, Bellevue, Wash., for Culligan Water Service.

David Utevsky, Cynthia R. First, Foster Pepper & Shefelman, Seattle, Wash., for Hearst Corp.

## ORDER ON SETTLEMENTS

McGOVERN, District Judge.

THIS MATTER is before the Court on Third–Party Plaintiffs' Motion for Entry and Approval of Settlement Agreements.

### Moving Parties' Argument and Authorities

Third-party Plaintiffs Boeing, *et al.* (Plaintiffs) seek approval of 26 settlement agreements with certain third-party defendants (Settling Defendants) for the subsurface clean-up of the Western Processing Site. Plaintiffs also seek a finding that the amounts to be paid by them represent their equitable shares of the costs of that clean-up.

The settlement agreements were negotiated considering amount of waste contributed to the site, the burden of continued litigation, the facts about the parties' conduct known at the time of settlement, and an estimate of what the total Phase II cleanup costs might be in the future. (Declaration of Douglas Little.)

The payments were calculated by the method used to compute the payments of those who signed the Phase II Consent Decree, *i.e.,* multiplying each Settling Defendant's volumetric share of the Site waste, as derived from the records compiled by the Environmental Protection Agency by the initially-estimated cost of the cleanup ($47,588,323). Similarly constructed settlements were offered to all defendants.

The agreements are in two forms. In one form, the Settling Defendant makes a one-time payment plus a "premium," to cover possible cost increases. In the other, the Settling Defendant makes periodic payments reflecting its proportionate share of liability of the actual clean-up cost, a contribution equivalent to that of the signatories of the Phase II Consent Decree.

In both agreement forms, Plaintiffs would give the Settling Defendants a covenant not to sue with respect to certain covered matters of the Phase II cleanup.

Plaintiffs argue that the Agreements are fair and reasonable and that an adequate basis exists for finding that the settlement amounts represent the Settling Defendants' equitable shares. The Court has discretion under CERCLA, (42 U.S.C. §§ 9601 *et seq.*) to allocate clean-up costs, but no clear guidance is given under the Statute or case law as to how to do so in private contribution lawsuits. The Statute states only that the Court use "such equitable factors as the Court determines are appropriate." 42 U.S.C. § 9613(f).

The issue presented by these settlements is somewhat analogous to a consent decree presented pursuant to CERCLA. The Court should consider the settlement in terms of certain factors such as strength of case and amount of offer, etc., in accordance with facts and circumstances known at the time of settlement.

The reasonableness review under Washington law, RCW 4.22.060 is also somewhat analogous. The Court need not make a determination that the settlement strictly reflects actual liability, but may consider risk and expenses of litigation, relative fault, ability to pay, etc.

The settlements represent the Settling Defendants' equitable shares of response costs. Most had very limited involvement with the site. CERCLA authorizes the United States to enter into "de minimus" settlements with minor contributors. Plaintiffs analogize that process to the proposed settlement here.

Not only will approval of the settlements simplify the litigation, it will encourage settlements and achieve an equitable apportionment of liability, two policies pertinent to CERCLA consent decrees.

### Opposition of Defense Liaison Counsel

Defense Liaison Counsel (DLC), on behalf of all nonsettling Third–Party and Cross–Claim Defendants opposes Third–Party Plaintiffs' motion. First, any Court approval of a settlement agreement in the contribution actions should specify the effect of the settlement on claims by or against other Third–Party Defendants. Second, no Court approval of a settlement in these actions should affect in any way

the Court's ultimate determination of any party's equitable share of the total liability. DLC views the core issue of the contribution actions to be the proper method by which to determine each party's equitable share of liability.

DLC proposes an alternative order approving the settlements and for disposition of claims by and against other Third–Party Defendants in accordance with 42 U.S.C. § 9613(f) and the Uniform Comparative Fault Act, 12 U.L.A. 39 (Supp.1989) (hereafter UCFA). The need for a reasonableness determination with respect to these or future settlements would then be eliminated. The DLC's rationale is as follows.

The DLC are concerned with the Plaintiffs' requested finding that the amount of each settlement reflects the settling defendant's "equitable share" of total liability. The DLC submit that this finding would prejudge the core issue of the proper method by which to determine each defendant's equitable share of total liability, and that Plaintiffs would anticipate that such a finding would (1) effectively eliminate claims by the remaining defendants against the settling defendants and (2) would reduce the Third–Party Plaintiffs' claims against the remaining defendants by the amount of the settlements.

The DLC assert that the Uniform Comparative Fault Act (UCFA) would result in a fairer procedure. The DLC cites four cases from New York, Pennsylvania, Illinois, and Missouri where the Uniform Comparative Fault Act was held to be the contribution framework best suited to CERCLA cases. Generally, 42 U.S.C. § 9613(f) provides that CERCLA contribution claims "shall be governed by Federal law." DLC assert that this implies the development of uniform national rules rather than to use the law of each of the 50 states. Fair and equitable apportionment of liability is best fostered by the UCFA as *it imposes upon each defendant only its equitable share of the total liability, regardless of settlements by other defendants.* The UCFA § 6, 12 U.L.A. at 52 (Supp.1989) provides that a settlement agreement between a claimant and a liable person "discharges that person from all liability for contribution...."

> However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.

(*Id.*) The equitable share of each defendant, including those who have been released through settlement, is determined at trial. (*Id.* § 2.) In effect, a claimant bears the risk that he has settled with an individual defendant for too little. At trial, the claimant cannot recover for his own equitable share of the liability or for the equitable share of defendants with whom he has settled earlier. It is never necessary for the court to review the amount of any settlement for reasonableness.

The DLC note that it is apparently the intent of Third–Party Plaintiffs that the proffered settlements dispense with the liability of the settling defendants for both Phase I and Phase II, although the Third–Party Plaintiffs' proposed order does not distinguish between Phase I and Phase II. The DLC does not object to disposing of the Phase I liability of the settling defendants, as long as Third–Party Plaintiffs are charged with the equitable share of each settling defendant for both Phase I and Phase II.

Under DLC's proposed order, the only remaining potential liability of the settling defendants is that in connection with several million dollars of costs incurred by the United States or the State of Washington that were not recovered under either Consent Decree, but which have been paid by individual Third–Party Defendants through separate settlements or may be paid by such defendants in the future through the government's enforcement action, which the Court recently severed from the contribution actions. Third–Party Plaintiffs cannot settle these claims because they are not party to any claims involving these costs nor are they asserting damages for these costs.

Concerning what it believes to be the core issue in this litigation, DLC argues

that it would be improper for the Court to rule on any party's equitable share of the total liability now. In determining the proper method to allocate liability, the Court may apportion liability in accordance with the equitable factors that it deems appropriate. (42 U.S.C. § 9613(f)) At trial, Third–Party Plaintiffs will present their model of proper allocation, likely focused on volume alone, while Third–Party Defendants will present their model, which will consider volume plus relative concentration, costs peculiarly associated with particular contaminants, and Boeing's control over Western Processing Company. If the Court were to deem the settlements reflective of the equitable shares of the settling defendants, DLC argues the entire dispute would be prejudged.

DLC also points out that the settling defendants include defendants with fairly small stakes in the litigation; consequently, these defendants lack the incentive to pursue the issue of the proper computation of equitable shares.

DLC argues that at trial, determination of the equitable shares of defendants who previously settled will not be unduly burdensome as it will be largely formulaic, and insofar as additional effort is required of the remaining defendants, it is simply the cost of protecting the remaining defendants' rights.

Finally, DLC argues that determination of the equitable shares of the settling defendants is unnecessary under DLC's alternative procedure.

### Opposition of Jack & Leah Pinchev

Supplementary to DLC's argument, Pinchevs cite *Franklin v. Kaypro Corporation*, 884 F.2d 1222 (9th Cir.1989), a securities case where, as here, the right to contribution was governed by federal law, but the statutes did not specify how the contribution right applies in partial settlement cases. The Ninth Circuit held that the trial court's reference to California law when it conducted "good faith" hearings on the amount of proposed settlement was wrong. The Court discussed three alternatives to contribution, including the approach offered by the Third–Party Plaintiffs here. The Ninth Circuit rejected that approach and adopted the approach that is essentially the one offered by DLC (*id.* at 1231).

Concerning the contribution criteria, Pinchevs argue that the Plaintiffs merely state the settlements are equitable and fair but do not attempt to support that assertion factually. For example, in *United States v. Monsanto Co.*, 858 F.2d 160 (4th Cir.1988), the Court rejected apportionment of liability upon volumes of waste generated explaining (1) that such an approach would be reasonable only where independent factors had no substantial effect on harm to the environment, and (2) that a million gallons of certain substances could be mixed without causing significant consequences, while a few pints of another substance improperly mixed could result in disastrous consequences. In *United States v. Chem–Dyne Corp.*, 572 F.Supp. 802 (S.D.Ohio 1983), the Court stated:

> ... [T]he volume of waste of a particular generator is not an accurate predictor of the risk associated with the waste because the toxicity or migratory potential of a particular hazardous substance generally varies independently with the volume of the waste.

*Id.* at 811. Pinchevs are presently examining apportionment based on toxicity and apportionment based on the costs of various components of the remedial effort; the latter is based on the theory that one whose waste did not contribute to some particular subfacet of the problem ought not be called upon to pay for the remediation of it.

Pinchevs also refer to documents produced in the settlement of Judge Dimmick's case that indicate Boeing delivered at least 65 percent by volume of the wastes taken to Western Processing rather than 55 percent upon which the current settlements are based. This, the Pinchevs contend, is an indicator that the proposed settlements are not equitable. Moreover, there is yet to be determined the U.S. and Washington State governments' liability.

*Reply of Third–Party Plaintiffs*

First, Plaintiffs argue that a determination of equitable shares now will greatly simplify the litigation. If the settling parties' equitable shares are determined now, it will put beyond dispute their responsibility. If the Court were to accept DLC's assertion that "the relative degree of each defendant's responsibility for the contamination of the Western Processing site affects the relative degree of every other defendant's responsibility," the Court will become enmeshed in determining the equitable share of each of the 188 defendants that signed the Phase II Consent Decree.

Moreover, if factors other than volume must be considered in making an allocation, additional massive discovery and an extended trial will ensue to determine each settlor's liability according to those factors other than volume. No peace to the settlors and a needless burden on the Court.

DLC's argument that Plaintiffs should bear any shortfall if later determination shows the settlors paid too little unfairly penalizes Plaintiffs who were parties to the consent decree, are cleaning up the site, and now trying to simplify the litigation with settlements; Plaintiffs should fare no worse than nonsettling defendants.

The Uniform Comparative Fault Act is inapplicable because the instant case does not follow the form of the UCFA and Congress rejected the UCFA provisions when it fashioned CERCLA's contribution provisions. This litigation involves one group of jointly and severally liable parties suing another. The enforcement action would fit the model with the Governments as the claimants harmed and the defendants, those responsible; the relative liability of all, including the Governments would have been decided therein. Congress mandated the nonsettling defendants' liability would simply be offset by the amount paid in settlement. 42 U.S.C. § 9613(f)(2).

The UCFA's procedure has not been followed in this litigation thus far. There was no determination of each party's liability in the enforcement action, but was resolved by settlement providing enough funds to go ahead with the cleanup. The defen-

dants remain jointly and severally liable to the Governments, but the liability of the defendants *inter se* is only several. *United States v. Conservation Chemical Company,* 619 F.Supp. 162, 229 (W.D.Mo.1985). DLC's cases all concern settlement agreements between the governments and parties who are jointly and severally liable.

The Uniform Contribution Among Tortfeasors Act more properly applies herein, and has been applied in CERCLA actions. *United States v. Pepper's Steel & Alloys, Inc.,* 658 F.Supp. 1160, 1168 (S.D.Fla.1987) (approval of CERCLA consent decree). UCATA provides contribution protection to all settlors and reduces the amount of the nonsettlors' liability by the amount of the settlements. *See* § 4 UCATA, 12 U.L.A. 98 (1975).

Second, the volume based settlements do not create precedent for the determination of equitable shares of other third-party defendants. Plaintiffs concede that volume may not be a perfect basis for allocation of liability, but submits that it can in the case of de minimis settlements at this stage be prompt and cost-effective. After discovery, etc., volume may not be appropriate and other factors, including recalcitrance and an uncooperative approach may also be pertinent.

Third, concerning two miscellaneous points:

(1) contrary to what the Pinchevs asserted, an offer was made to LIDCO, through its counsel, who is also counsel for Pinchev's, and that offer would have settled LIDCO's and Pinchevs' liability.

(2) CERCLA says only that contribution actions are to be governed by Federal law, not that they should be governed by a uniform rule. It tells only which law, not the content of the law.

## ANALYSIS

Both sides of this third-party action agree that the settlement with these 26 relatively minor Potentially Responsible Parties (PRPs) is desirable. The questions concern (1) whether or not the settlement amount should be characterized as the set-

tlor's equitable share of liability and (2) the effect of the settlement upon the remaining third-party defendants.

There does not appear to be a system for resolving partial settlements in tort actions that is satisfactory in every respect. *See, e.g.,* Article, *Washington's Unique Approach to Partial Tort Settlements: The Modified Pro Tanto Credit and The Reasonableness Hearing Requirement,* 20 Gonzaga Law Rev. 69 (1984/85). The pro rata, pro tanto, and proportionate credit concepts individually have substantial advantages and significant disadvantages.

### Pro Tanto Rule

The pro tanto approach is that contained in the Uniform Contribution Among Tortfeasors Act (UCATA). This is the rule endorsed by the Third-party Plaintiffs with respect to the 26 settlements. The UCATA provides contribution protection to all settlors and reduces the amount of the nonsettlors' liability by the amount of the settlements. § 4 UCATA, 12 U.L.A. 98 (1975).

The pro tanto credit advantages are set forth in the Gonzaga article as follows: (1) Does the least to discourage settlement as the settlor is discharged from all liability for contribution; (2) preserves the Plaintiff's incentive to settle as it allows the plaintiff to know the exact amount of the credit he is conveying and assures him he will recover the full amount of his proven damages. 20 Gonzaga Law Rev. at 88.

The pro tanto credit disadvantages are as follows: (1) inconsistent with a policy of equitably distributing losses among defendants based upon proportionate fault, as the remaining defendants receive pro tanto credit rather than proportionate credit based upon the settling defendant's fault; this undermines equitable apportionment based on fault even where the pro tanto credit might produce a reduction larger than one resulting from the proportionate approach; (2) may act as an impediment toward total settlement as a nonsettling defendant may count on the guaranteed credit and then gamble on the verdict rather than settle; (3) may encourage collusion between settling parties; (4) fails to eliminate problems inherent in complex cases involving multiple plaintiffs or multiple accidents: this approach requires that an allocation of the settlement be made, but since there is no standardized method for making such allocations, the result may be unfairness to the nonsettlors. *Id.* at 88–90.

### The Proportionate Rule

The Uniform Comparative Fault Act (UCFA) uses the proportionate credit rule in its treatment of partial settlements. This is the rule endorsed by the DLC. This approach results in the reduction of the plaintiff's claim by the percentage of the settling defendant's causal fault. At the time of settlement, however, the plaintiff does not know either the exact amount or the proportion of the credit reduction; this must await determination at trial of total damages and the percentage of the settling defendant's proportionate fault. The settlor is discharged from all liability for contribution, but may seek contribution from nonsettlors for reasonable amounts paid to extinguish his and the nonsettling defendant's joint liability. *Id.* at 99–100.

The proportionate rule is most consistent with most modern comparative fault and contribution rules. Examples of the comparative negligence trend include Washington State which has substantially adopted the major provisions of the UCFA; thus, Federal Tort Claims Act cases occurring in this jurisdiction are subject to Washington's comparative negligence scheme. Also, the Federal Employers' Liability Act provides for comparative negligence.

The proportionate system's advantages are that it

(1) provides for equitable apportionment of responsibility, and where there is a partial settlement, the judgment is reduced by the proportionate fault of the settling defendant who is then discharged;

(2) complex partial settlements involving multiple parties, claims, or theories are more easily resolved (without the imprecision of allocation prior to trial by the court under the pro tanto theory);

(3) the need for a good faith hearing is eliminated as the proportionate credit is not based on the amount of the settlement;

(4) total settlement is encouraged after partial settlement as a culpable nonsettlor cannot escape responsibility when a settling defendant pays more than his fair share and cannot gamble on a jury verdict in view of a guaranteed credit; this serves also to deter wrongful conduct. *Id.* at 101–03.

The disadvantages of the proportionate rule are that

(1) recovery of the exact amount of the total damages set by the trier of fact is entirely fortuitous when there has been partial settlement, as the nonsettlors pay only their fair share regardless of the amount of settlements paid; this can lead to

(2) impairment of a claimant's willingness to settle because of the uncertainty of the amount to be credited for the settlements;

(3) at trial, a plaintiff must not only advocate his freedom from fault, but also convince the trier of fact of the settlor[s] minimal fault. In complex cases the plaintiff may not have access to information that the settling defendant would have had, and a distortion could result from the settlor not defending his own interest. *Id.* at 103–05.

Considering the advantages and disadvantages of each of these rules, the Court concludes that the proportionate rule is the best for this case. The advantages of the proportionate rule are more significant and important in this case than the pro tanto rule's advantages.

One commentator has analyzed the contribution rights under CERCLA and concluded that the comparative fault rule of allocation is most appropriate. *See generally,* Note, *The Right to Contribution for Response Costs Under CERCLA,* 60 Notre Dame Law Rev. 345 (1985). Also, since the courts have rules that joinder is permissive in these cases, and since not all parties will necessarily be joined, a separate lawsuit for contribution may be the best was to ensure that a defendant pays no more than its fair share for a cleanup. *Id.* at 355.

Several recent cases have concluded that the proportionate fault rule is appropriate in CERCLA cases and have applied the concepts of the Uniform Comparative Fault Act. For example, in *The City of New York v. Exxon,* 697 F.Supp. 677 (S.D.N.Y. 1988), the Court resolved the issue of whether the protective benefits of 42 U.S.C. § 9613(f)(2) applied to settlement with a city, decided that the matter of contribution protection could be resolved without regard to whether § 9613(f)(2) applied and held the Uniform Comparative Fault Act applied to CERCLA settlements, adopting the reasoning of *United States v. Conservation Chemical Co.,* 628 F.Supp. 391 (W.D.Mo.1985).

In *Conservation Chemical,* the Court noted that while it was not obligated at the time of partial settlements to decide the issue of the effect of settlements upon nonsettlors, the Court deemed it advisable to render its views now as "the effect of settlement upon nonsettling parties cannot be divorced from the overall issue of the basis upon which liability will be apportioned among the parties." *Id.* at 401.

### Conservation Chemical

The Court then referred to three possible solutions: (1) Despite a release, nonsettlors can obtain contribution from settlors; (2) nonsettlors not entitled to contribution unless release was given not in good faith; or (3) the injured party's claim is reduced by the proportionate share of the settling tortfeasor. The first two choices are the earlier and later formulations of the Uniform Contribution Among Joint Tortfeasors Act, and the third is the Uniform Comparative Fault Act. *Id.*

While CERCLA is silent on apportionment methodology, the Court concluded that it was clear that any method must take into account disparate parties whose relative fault depends upon factual circumstances (volume, toxicity, migratory potential, etc.) If these factors are to be given effect, apportionment must be made on some basis of comparative fault. *Id.*

The Court reasoned that contribution is a remedy developed in equity and that the legislative history of CERCLA imposes on the judiciary an obligation to apportion responsibility fairly and equitably. The Court would not tolerate "windfall" or "wipeout" resulting in apportionment that arbitrarily or unreasonably ignores the parties' comparative fault when there is a reasonable basis for making the comparison. *Id.* at 402.

Accordingly, the Court concluded that the effect of settlement upon nonsettlors should be governed by the 1977 Uniform Comparative Fault Act because its principles are most consistent with and do most to implement Congressional intent at the foundation of CERCLA. *Id.*

Similarly, the Court in *Lyncott Corp. v. Chemical Waste Management*, 690 F.Supp. 1409 (E.D.Pa.1988), adopted the UCFA reasoning that there ought to be a uniform federal rule so that consistent principles of contribution and allocation of damages develop in CERCLA actions. *Id.* at 1417. The Court cited *Conservation Chemical* and the Notre Dame Note.

The *Lyncott* court rejected the Uniform Contribution Act stating that its lack of finality discouraged settlement, and rejected the Uniform Contribution Among Tortfeasors Act because it favored pro rata apportionment over comparative fault (inconsistent with the law of the case to that point) and it required a fairness hearing in every case to determine good faith. *Id.* at 1418.

The UCFA, on the other hand, avoids the inequity of nonsettlors having to absorb shares of responsibility not allocable to solvent responsible parties, and solves problems of settlements involving nonmonetary consideration. *Id.* at 1418.

*Contribution Provision of § 9613*

Section 9613(f)(2) is entitled "settlement" and concerns the effect of settlement with the United States or a state. While this subsection provides that a settlement with the Governments "reduces the potential liability of the others by the amount of the settlement," that section does not mandate a similar result concerning contribution.

Section 9613(f) is entitled "Contribution." Subsection (1) is entitled "Contribution" and provides in pertinent part:

> Any person may seek contribution from any other person who is liable or potentially liable under section 107(a),.... In resolving contribution claims the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate....

Contribution and allocation is specifically what this third-party action is about, and the Court is free to apply the UCFA provisions.

NOW, THEREFORE, the Motion of Third–Party Plaintiffs for Entry and Approval of the Settlement Agreements is GRANTED in part and DENIED in part.

1. The Court will be guided by the 1977 Uniform Comparative Fault Act, 12 U.L.A. 39 (Supp.1989) in this contribution/allocation action.

2. Third–Party Plaintiffs have entered settlement agreements with 25 Third–Party Defendants. These agreements release the settling defendants from claims asserted by Third–Party Plaintiffs based on costs pursuant to the Phase II Consent for remedial action at the Western Processing site. One agreement also releases a settling defendant from claims asserted by Third–Party Plaintiffs based on costs pursuant to the Phase I Consent Decree. Each of the agreements is contingent upon Court approval. The settling Third–Party Defendants are: Ace Galvanizing Metals; Columbia Paint Co.; Culligan Water Service; Inland Transportation Co.; Lee & Eastes; Lumber Trucking; Norfin Inc./Norfin Collator; Pipe Specialties, Inc.; Canadian Forest Products, Ltd.; Cascade Chemical Co.; Coastal Tank Cleaning, Inc.; Garret Freight Lines (ANR); Ludtke–Pacific Trucking Co.; Mar–Jon Construction; Matlack, Inc. (C.F. Tanklines); Pacific Sound Industrial Co.; Pay N Save Corp.; Pozzi Bros. Transportation; Radiation International (ICC); Ryan & Haworth Co.; Ryder/P–I–E Nationwide, Inc.; Sea–Land Freight Services, Inc.; South Center Oil

Co.; Jack Creager Trucking, Inc.; and Van Vetter, Inc.

3. The Court hereby approves and enters the 25 settlement agreements between Third–Party Plaintiffs and the settling Third–Party Defendants. By virtue of this Order, all claims for response costs or contribution by any remaining defendant against any settling defendant arising out of claims asserted by Third–Party Plaintiffs are hereby DISMISSED, WITH PREJUDICE.

4. The Court makes no finding as to any party's equitable of liability for Phase I or Phase II remedial action at the Western Processing site.

5. With respect to the claims by Third–Party Plaintiffs against remaining defendants, the Court adopts the rule of UCFA § 6, 12 U.L.A. 39, 52 (Supp.1989). Such claims shall be reduced by the amount of each settling Third–Party Defendant's equitable share of liability for both Phase I and Phase II remedial action, as equitable shares are determined at trial.

6. Nothing in this Order shall affect the potential liability of any party for response costs or contribution with respect to any costs incurred by either the United States or the State of Washington at the Western Processing site but not recovered by either pursuant to the Phase I Consent Decree or the Phase II Consent Decree.