**UNITED STATES of America, and State of Indiana, Plaintiffs,**

v.

**SCA SERVICES OF INDIANA, INC., Defendant.**

**SCA SERVICES OF INDIANA, INC., Third–Party Plaintiff,**

v.

**OMNI SOURCE CORPORATION, et al., Third–Party Defendants.**

Civ. No. F 89–29.

United States District Court, N.D. Indiana, Fort Wayne Division.

June 28, 1993.

Angila M. Prather, Timothy Junk, Office of Indiana Atty. Gen., Indianapolis, IN, David H. Miller, U.S. Attys. Office, Fort Wayne, IN, Maureen M. Katz, U.S. Dept. of Justice, Environmental Enforcement Section, Environment and Natural Resources Div., Washington, DC, for plaintiffs.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Percy L. Angelo, Patricia F. Sharkey, Kurt D. Williams, Thomas W. Dimond, Kurt D. Williams, Mayer Brown and Platt, Chicago, IL, Matthew L. Kuryla, Cleveland, OH, for defendant/third-party plaintiff/counterdefendant.

Alan VerPlanck, Robert S. Walters, David R. Steiner, James Fenton, Barrett and McNagny; Solomon L. Lowenstein, Jr.; Larry L. Barnard, Milford M. Miller, Miller Carson Boxberger and Murphy, Fort Wayne, IN; Roseann Oliver, Chicago, IL; Thomas A. Coz, Frederick X. Shadley, Benesch Freidlander Coplan and Aronoff, Cincinnati, OH; Gaspare G. Ruggirello, Gabriel M. Rodriguez, Frith C. Crandall, Chicago, IL; Tim A. Grogg, Columbus, IN; Vincent J. Backs, Beers Mallers Backs and Salin; Richard P. Samek, Miller Carson Boxberger and Murphy, Fort Wayne, IN; D.H. Brennan, Jr., Chicago, IL; Abraham Singer, David L. Maurer, Thomas P. Wilczak, Detroit, MI; Robert B. Wright, Robert B. Wright and Associates P.C., Fort Wayne, IN; William J. Pinamont, Philadelphia, PA; Barry L. Malter, Warren Anthony Fitch, Julie A. Weisman, Washington, DC; Andrea Kojm Thomas, Corning, NY; Arthur G. Surguine, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN; Anita Crews, Susan M. Griesgraber, John C. Knoepfler, Minneapolis, MN; Ronald J. Tirpak, Schenkel and Tirpak, Fort Wayne, IN; James G. Fausone, Troy R. Taylor, Dykema Gossett, Detroit, MI; James R. Morrin, Sanford M. Stein, Lori Prokes Davis, Chicago, IL; Todd A. Mikesell, Scott E. Shockley, DeFur Voran Hanley Radcliff and Reed, Muncie, IN; C. Erik Chickedantz,

Thomas M. Gallmeyer, Hawk Haynie Gallmeyer and Chickedantz, Fort Wayne, IN; Thomas B. Smith, J. Daniel Berry, Washington, DC; Harvey L. Friedman, Laurence Y. Solarsh, New York City; Nancy Martin, Detroit, MI; James J. Shea, Robert E. Kabisch, Hunt Suedhoff Borror and Eilbacher; W. Michael Horton, Burt Blee Dixon and Sutton, Fort Wayne, IN; Williams D. Evans, Jr., Washington, DC; Andrea L. Hermer, F. Dennis Logan, Rothberg Gallmeyer Fruechtenicht and Logan; Thomas P. Yoder, Barrett and McNagny; Travis S. Friend, Frank J. Gray, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN; Larry D. Espel, Peter L. Tester, Minneapolis, MN; Ronald B. Noga, Columbus, OH; W.C. Blanton, Jodie L. Miner, Ice Miller Donadio and Ryan, Indianapolis, IN; Daniel J. Borgmann, Helmke Beams Boyer and Wagner, Fort Wayne, IN; Bryan G. Tabler, Barnes and Thornburg, Indianapolis, IN; Carl S. Grabinski, Chicago, IL; Edward E. Beck, John B. Powell, Daniel Serban, Shambaugh Kast Beck and Williams, Fort Wayne, IN; Michael J. Hughes, Edmund B. Moran, Jr., Chicago, IL; Loren K. Allison, John C. Theisen, Gallucci Hopkins and Theisen P.C., Fort Wayne, IN; Dean S. Applefield, Hartford, CT; Michael P. Carlton, Milwaukee, WI; Michael D. Sears, Singleton Crist Patterson Austgen and Lyman, Munster, IN; Mark Mester, Laurence Levine, Mary Rose Alexander, Chicago, IL; Frederick R. Tourkow, Fort Wayne, IN; John C. Duffey, Anthony S. Benton Stuart and Branigin, Lafayette, IN; Maureen Grimmer, Eichhorn Eichhorn and Link, Hammond, IN; James W. Clark, Baker and Daniels, Indianapolis, IN; Holly D. Warshauer, Fort Wayne, IN; Raymond C. Marshall, David E. Moser, San Francisco, CA, Stephen J. Lerch; Paul B. McNellis, Wyss McNellis Riebenack and Myers, Fort Wayne, IN; Mark A. Goldsmith, C.J. Dunsky, Honigman Miller Schwartz and Cohn, Detroit, MI; Diana H. Hull, Miami, FL; Michael S. Talbett, M.D. Hayes, J.L. Lucari, Holleb and Coff, Chicago, IL; Nicholas J. DeBenedictis, Philadelphia, PA; Norman L. Roelke, Fort Wayne, IN; David G. Thomas, Daniels Sanders Pianowski Hamilton and Todd, Elkhart, IN; Ronda P. Bayer, Minneapolis, MN; Terrence M. Fay, Columbus, OH; and Frank J. Deveau, Lawrence A. Vanore, Sr., and Sommer and Barnard, Indianapolis, IN, for third-party defendants.

Auto Trim Co., John Fabini, pro se.

Stephen Q. Giblin, Matthew L. Kuryla, Cleveland, OH, for third-party defendant/counterclaimant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Third-Party Plaintiff, SCA Services of Indiana, Inc. ("SCA") and fourteen (14) of the Third-Party Defendants' ("Settlors")[1] "Joint Motion for Approval of Settlements" and supportive brief, filed April 20, 1993. Certain Third-Party Defendants ("Non-Settlors")[2] filed objections to the Joint Motion for Approval of Settlements on May 7, 1993. SCA filed a reply to the opposition May 17, 1993, and counsel for four Non-settlors[3] filed a response to SCA's reply May 27, 1993.

After a hearing on May 28, 1993, the court took the matter under advisement. For the following reasons, the Joint Motion for Approval of Settlements is GRANTED.

---

**1.** The fourteen (14) Third-Party Defendant Settlors are: Allen County Motors, Inc.; The Crosby Group, Inc.; Deister Concentrator Co. Inc.; Wm. A. Didier & Sons, Inc.; Evans Products Co.; Federal-Mogul Corp.; Fort Wayne Clutch, Inc.; Fort Wayne Public Transportation Corp.; The Glidden Co.; Meek Mack, Inc.; Meyer Stamping & Manufacturing Co., Inc.; Ryder Truck Rental, Inc.; United Limo, Inc.; and Wayne/Scott Fetzer Co.

**2.** Non-Settlors A & J Enterprises; Almet Inc.; Indiana Stamp & Seal; Perfection Varnish; Hassan Barrel Co., Inc.; The Fonda Group, Inc.; Valspar Corp.; Uniroyal Goodrich Tire Co.; Chrysler Corp.; Fruehauf Corp.; B.F. Goodrich Auto Store; NIPSCO; Zollner Corp.; Omni Source Corp.; and Navistar International Transportation Corp. filed a joint objection on May 7, 1993. Norfolk & Western filed a separate objection on May 7, 1993. Borg-Warner and Maremont also filed an joint objection on May 7, 1993.

**3.** The Uniroyal Goodrich Tire Co., Chrysler Corp., Fruehauf Corp., and B.F. Goodrich Auto Store.

## BACKGROUND

The government initiated this environmental action by filing a complaint against SCA pursuant to §§ 104(a) and (b), 106(a), 106 and 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9604(a) and (b), 9606(a), 9606 and 9607(a) ("CERCLA"). In that complaint, the government sought to recover past and future response costs allegedly incurred, or to be incurred, by the government at the Fort Wayne Reduction Site in Allen County, Indiana ("the site"). The government's complaint sought to make SCA comply with all the terms of an August 26, 1988 Record of Decision ("ROD") signed by the EPA's Regional Administrator.

The site is located near Fort Wayne, in Allen County, Indiana. The government alleges that, from 1967 to 1976, a variety of hazardous substances (industrial wastes, industrial liquids and sludges)[4] were disposed at the site. At the May 28, 1993 hearing, at least one party estimated that remediation costs to clean up the site could exceed $15 million.

Soon after the complaint was filed, the government and SCA entered into a consent decree in which SCA agreed to perform remedial work specified in the ROD, and make specified payments to the government. The court entered the Consent Decree on July 18, 1989, and since that time, SCA has been performing work at the site under the ROD and has been making specified payments under the Decree.

In *Environmental Transportation Systems, Inc v. ENSCO, Inc.* 969 F.2d 503, 506 (7th Cir.1992), the Seventh Circuit discussed CERCLA's basic scheme of contribution among Potentially Responsible Parties ("PRPs") in environmental litigation: "Section 9613(f)[1] of Title 42, United States Code [Section 113(f)(1) of CERCLA], provides that any person may seek contribution from any other person who is liable or potentially liable under CERCLA, 42 U.S.C. §§ 9601 *et seq.*"[5] Given this scheme, on November 23, 1992, SCA filed its first Amended Third-Party Complaint against over eighty (80) Third-Party Defendants for contribution of costs. The Third-Party Defendants responded by filing answers and affirmative defenses to SCA's third party complaint.[6] After much negotiation, SCA and the fourteen Settlors agreed to the terms of the pending settlements. In their memorandum accompanying the instant motion, SCA and the Settlors report that the settlement amounts for each Settlor[7]

> ... was based upon an evaluation of the Settlor's alleged share of liability for the generation and arrangement for transportation, treatment or disposal of wastes containing hazardous substances at the Site, and an evaluation of the costs and risks assumed by SCA under the terms of each Settlement Agreement. The determination of each Settlor's share of liability was made based upon all information known to SCA and the individual Settlor. ...

> Third Party Defendant's contribution of wastes to the Site, in many cases, was calculated based upon San–A–Tainer accounts receivable documents. These documents indicate monthly customer charges for hauling and disposal at the Site ranging from $22.00 per month for small generators to $1,000.00 to $2,500.00 per month for large generators.

---

4. As defined by § 101(14) of CERCLA, 42 U.S.C. § 9601(14).

5. In addition to authorizing the contribution action, the statute provides further guidance on resolution of those actions: "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1); CERCLA § 113(f)(1).

6. Third–Party Defendants make no claim against the government.

7. Settlement amounts are as follows: Allen County Motors, Inc., $12,500; The Crosby Group, Inc., $35,000; Deister Concentrator Co., Inc., $43,750; Wm. A. Didier & Sons, Inc., $43,-750; Evans Products Co., $16,187; Federal-Mogul Corp., $43,750; Fort Wayne Clutch, Inc., $11,500; Fort Wayne Public Transportation Corp., $12,500; The Glidden Co., $43,750; Meek Mack, Inc., $11,500; Meyer Stamping & Manufacturing Co., $25,000; Ryder Truck Rental, Inc., $12,500, United Limo, Inc., $12,500; Wayne/Scott Fetzer Co., $12,500.

Memorandum in Support of Joint Motion for Approval of Settlements, pp. 1 and 2.

The settlement agreements between SCA and the Settlors basically provide that the Settlors will pay SCA an established consideration, and that SCA and the Settlors covenant not to sue each other. The agreements recite that the Settlors have provided SCA with all information known to them (after the exercise of due diligence) regarding their alleged participation in contributing to the environmental degradation of the site, and the agreements also contain a standard new-information "reopener" provision. SCA and the Settlors further agree that the settlements do not become effective unless and until the Joint Motion for Approval of the Settlements is approved by the court.

### DISCUSSION

In their Joint Motion for Approval of Settlements, SCA and the Settlors seek a finding that the settlements are entered into in good faith, a judgment dismissing the Settlors from SCA's Third Party action, a judgment dismissing "all counterclaims, cross-claims and fourth party claims which have been or could be made against [the] Settlor[s] by any person in connection with the Third Party Complaint or the Consent Decree." At the May 28, 1993 hearing, SCA and the Settlors informed the court that the protection from fourth party claims is not intended to bar any entities or persons not currently a party from bringing future fourth party claims but, rather, is intended to bar any present parties from bringing any such claims against the Settlors.

The Non–Settlors object to the settlements, and the court is faced with resolving three chief issues. First, although CERCLA does not specifically provide for protection against contribution in settlements between private parties, the court must determine whether parties such as the Settlors are relieved of liability for claims for contribution regarding matters addressed in the settlement. The second issue before the court is whether the settlements should be approved at this point. The Non–Settlors argue that settlement is "premature" due to insufficient discovery, and "prejudicial" because the parties' "fair share" of responsibility cannot yet be determined. The third and final issue concerns determining to what extent the Non-settlors' liability will be offset if the settlements are approved.

### Private Party Settlement and Contribution

■ The first issue raised by the Non–Settlors, whether private parties who settle CERCLA claims with other private parties are free from claims for contribution, arises from section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2). In this subsection, CERCLA expressly provides that parties who settle with the *United States or any State* are free from claims for contribution:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2). This provision was intended to foster settlements and "to provide PRPs a measure of finality in return for their willingness to settle." *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 92 (1st Cir.1990). In rejecting the argument of the appellants who opposed the contribution bar of settling parties, that court further observed:

> Congress specifically provided that contribution actions could not be maintained against settlors. *See* 42 USC § 9613(f)(2) (1987). This provision was designed to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle. *See* H.R.Rep. No. 99–253, Part I, 90th Cong., 1st Sess. 80 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2862. Congress plainly intended non-settlors to have no contribution rights against settlors regarding matters addressed in settlement. Thus, the claims were properly dismissed; Congress proposed that all who choose not to settle

confront the same sticky wicket of which appellants claim.

*Cannons Engineering Corp.*, 899 F.2d at 92.

However, the text of CERCLA is silent as to whether claims for contribution are barred when private parties settle with other private parties. In addressing this issue, the court prefaces its ruling by expressing its concern that the basic purpose of Congress' environmental clean-up legislation is being thwarted by burdensome satellite litigation which has spawned and enriched an entire cottage industry devoted to environmental litigation. As the *Wall Street Journal* reported earlier this year in a front page article regarding Superfund litigation expenses:

> The legal burdens [of toxic waste cleanup] can sap small companies' resources. And the legal sparring can mean more money is spent on defense costs than on damages. Since the federal Superfund law was enacted in 1980 to help clean toxic-waste sites, according to a 1992 Rand Corp. study, insurers have spent an average of almost 90% of their Superfund-related outlays on legal fees and related costs—not on cleanup.

*No Exit: Mass–Liability Suits Can Trap Minor Players That Prefer to Settle: Fellow Defendants Force Small Dumper of Toxins Into a Litigation Morass: A Waste Pit Stays Hazardous*, Wall St.J., Jan. 4, 1993, at A1. The article further commented that minor defendants in toxic waste cleanup litigation spend significant sums of money and personnel resources being forced by co-defendants to litigate despite their efforts to negotiate early settlements. *Id.* The major goals of early negotiated settlements for such minor players include: devoting their personnel resources to increasing productivity/revenue generating activity, rather than to litigation defense efforts, and devoting most of their environmental liability expenses to remedying the toxic dump. *Id.*

Furthermore, in *Surveying the Superfund Settlement Dilemma*, a commentary discussing the issues which also happen to be before the court in the instant case, the authors likewise review CERCLA's pro-settlement slant, and comment on the onerous legal fees and related defense costs involved in hazardous waste satellite litigation:

> Often taking years to complete, complex multi-staged, multi-party CERCLA actions lead to astronomical transactional/litigation costs which drain both public and private sector resources....
>
> One practitioner recently estimated that the cost of assigning two attorneys to one Fortune 500 company involved in a CERCLA action may easily average $100,000 per year. If engaged in "full-blown" CERCLA litigation, the transactional costs can easily reach $200,000–$300,000 every six months for small groups of mid-volume to de minimis PRPs.

L. Boomgaarden & C. Breer, *Surveying the Superfund Settlement Dilemma*, 27 Land and Water L.Rev. 84, 91 (1992); *see also Cannons Engineering Corp.*, 899 F.2d at 89 (citing the enormous expense associated with environmental litigation.)

Courts have long recognized a strong federal interest in promoting settlement. *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir.1989); *Metropolitan Housing Dev. Corp. v. Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir.1980). In *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir.1985), the Seventh Circuit noted "the desirability of encouraging out-of-court settlements in order to lighten the judicial caseload create[s] a presumption in favor of approving the settlement." This is especially true in complex CERCLA litigation which would place an enormous strain on the judicial caseload if settlements were not encouraged. *See Cannons Engineering Corp.*, 899 F.2d at 84, *citing Donovan*, 752 F.2d at 1170. In enacting the 1986 amendments to CERCLA, Congress "sought to expedite effective remedial actions and minimize litigation." *City of New York v. Exxon Corp.*, 697 F.Supp. 677, 692 (S.D.N.Y.1988).

In *City of New York v. Exxon Corp.*, the court determined that 42 U.S.C. § 9613(f)(2) applied to bar claims for contribution in private settlements with the City of New York. *Id.*, 697 F.Supp. at 685. That court made this determination even though the language of the statute explicitly applied to bar claims for contribution only in cases when the PRP

"has resolved its liability to the United States or a State." *Id.* There, the court explained, "CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment. [Courts] are therefore obligated to construe its provisions liberally to avoid frustration of the beneficial legislative purposes." *Id., citing Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir.1986). Additionally, in *City of New York v. Exxon Corp., quoting Dedham,* 805 F.2d at 1081, the court reasoned that since one of the principal purposes of CERCLA is to ensure "that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created," allowing the City to proceed to settle private claims under section 42 U.S.C. § 9613(f)(2), and barring claims for contribution in private settlements "would certainly advance the Act's remedial purposes by encouraging early and complete settlements." *City of New York v. Exxon Corp.,* 697 F.Supp. at 685.

In *Allied Corp. v. Acme Solvent Reclaiming, Inc.,* 771 F.Supp. 219 (N.D.Ill.1990), Judge Roszkowski of the Northern District of Illinois was likewise faced with determining whether private parties who settle CERCLA claims with other private parties are protected from claims for contribution. In holding that non-settling Superfund defendants are barred from making any existing or future cross-claims for contribution against the settling defendants, he noted the federal courts' strong interest in promoting settlement:

> This interest is especially pronounced in complex matters such as CERCLA claims, where the amount of evidence to be gathered for assessing liability is voluminous. It is hard to imagine that any defendant in a CERCLA action would be willing to settle if, after the settlement, it would remain open to contribution claims from other defendants. The measure of finality which a cross-claim bar provides will make settlements more desirable. A settling defendant therefore "buys its peace" from the plaintiff, as being relieved of liability to co-

defendants frees the settling defendant from the litigation.

*Id.,* 771 F.Supp. at 223.

In addition to *Allied Corp., supra,* and *City of New York v. Exxon, supra,* many courts that have addressed this issue have determined that private settling parties are protected from claims for contribution which may be brought by other PRP's. *See Lyncott Corp. v. Chemical Waste Management Inc.,* 690 F.Supp. 1409, 1417 (E.D.Pa.1988); *United States v. Conservation Chemical Co.,* 628 F.Supp. 391, 402, (W.D.Mo.1985); *Comerica Bank–Detroit v. Allen Industries, Inc.,* 769 F.Supp. 1408, 1414 (E.D.Mich.1991).

This court wholly embraces CERCLA's policy of favoring settlement. In all Superfund litigation before this court, as much of the PRP's environmental liability response resources as are necessary and appropriate will be spent cleaning up hazardous waste sites; inordinate amounts of those resources will not be spent on legal fees and related costs not directly associated with remedying the sites. Accordingly, in order to further CERCLA's settlement-favoring policy, the court finds that the Non–Settlors are barred from making claims for contribution against the Settlors.

### Settlement Approval

The next issue facing the court is whether the settlements should be approved. The Non–Settlors argue that settlement at this point is "premature" due to insufficient discovery and "prejudicial" because the parties' "fair share" of responsibility cannot yet be determined.

The approval of a consent decree in the CERCLA context is "committed to the trial court's informed discretion." *Cannons Engineering Corp.,* 899 F.2d at 84. In *Conservation Chemical,* the court set out the following three factors courts must apply in deciding whether to approve a proposed decree: 1) whether the decree is consistent with the law; 2) whether the terms of the decree are fair and adequate; and 3) whether the settlement is reasonable. *Id.,* 628 F.Supp. at 399–400. The underlying purpose of this examination is to determine whether the settlement adequately protects the public interest,

mindful of "the clear public policy favoring settlements." *Id.; see also City of New York v. Exxon Corp.*, 697 F.Supp. at 692. Furthermore, it is not the court's function to determine whether the proposal is the best possible settlement that could have been obtained or one which the court itself might have fashioned, but rather "whether the settlement is within the reaches of the public interest." *Cannons Engineering Corp.*, 899 F.2d at 84.

The proposed settlement is in accordance with CERCLA law, and is likewise consistent with CERCLA's purpose of remediating hazardous waste sites as efficiently as practical. Further, this proposed settlement was entered into in good faith, and is the product of extensive arms-length negotiations. The Non–Settlors have put forth no evidence that the settlements have been otherwise achieved.

The court likewise believes that the proposal is fair and adequate in that the parties had a sufficient factual record upon which to reach an informed settlement. The agreements recite that after the exercise of due diligence, the Settlors have provided SCA with all information known to them regarding their alleged participation in contributing to the environmental degradation of the site. Substantial discovery has taken place over the life of this litigation. Indeed, more discovery could conceivably lead to new evidence which could influence the wisdom of these proposed settlements; however, the amount of discovery conducted to-date has provided a reasonable basis for these settlements. Additionally, to force many of these relatively minor-player Settlors to engage in further protracted discovery is contrary to CERCLA's primary objective and its pro-settlement posture, as discussed *supra.* The fairness of the proposals is likewise grounded in the court's application of principles found in the Uniform Comparative Fault Act (UCFA), as discussed *infra.*

The proposed settlement is reasonable and in the public interest. The primary interest of the public is that the site will be cleaned up at the earliest possible time, so that it does not pose a threat to health. These settlements are clearly in the public interest as they achieve early resolution of the apportionment of the remediation costs as between the settling parties, and as they will foster a more timely restoration of the site.

### Reducing the Non–Settlors' Liability: UCATA or UCFA

■ The final issue regarding the approval of the settlements is whether the liability of the Non-settlors will be reduced by the amount of the Settlors' equitable share of the obligation, or whether the Non–Settlors' liability will be reduced by the actual dollar amounts of the settlements. SCA argues for the approach of the Uniform Contribution Among Tortfeasors Act ("UCATA"). Under the UCATA, the liability of non-settling defendants is reduced by the amount stipulated by the release or covenant, or the amount of the consideration paid for it, whichever is greater. UCATA § 4, 12 U.L.A. 57, 98 (1975). SCA also argues that the UCATA approach should apply because section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2),[8] is modeled after the UCATA. However, that section expressly applies only to settlements with the federal or state government, and the statute is silent as to its applicability to private party settlements. *Comerica*, 769 F.Supp. at 1413 ("The plain language of the statute limits contribution protection to defendants who settle their differences with a governmental body. It does not discuss settlement between private parties.")

The Non–Settlors argue for the approach set out in the Uniform Comparative Fault Act ("UCFA"). The UCFA expressly provides for the application of comparative fault, and would reduce the Settlors' liability by the amount of the Settlors' equitable share of the obligation. Section 6 of the Uniform Comparative Fault Act provides as follows:

> A release, covenant not to sue, or similar agreement entered into between a claimant and a person liable discharges that

---

**8.** The text of CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), has been previously set forth at p. 6, *supra.*

person from all liability for contribution, but it does not discharge any other person liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation. . . .

UCFA § 6, 12 U.L.A. 44, 56 (Supp.1992). The Non–Settlors argue this approach is consistent with section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1).[9]

Boomgaarden and Breer address the distinction between the application of the UCATA in government CERCLA settlements and the UCFA in private party CERCLA settlements:

[I]n government settlement actions courts will generally interpret the language of section 113(f)(2) as requiring application of the UCATA. However, courts deciding contribution suits between private PRPs have almost unanimously adopted the UCFA. This different result is attributable to the contrasting language of section 113(f)(1) and section 113(f)(2). Section 113(f)(2) states that when someone settles with the United States or a state, the other nonsettling parties' liability will be reduced by the amount of the settlement, whereas section 113(f)(1) says that "in resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Section 113(f)(1)'s specific directive to consider equitable factors and section 113(f)(2)'s omission of the same language appear to dictate application of UCFA in actions between PRPs and the UCATA where the EPA or other state brings the action.

*Surveying the Superfund Settlement Dilemma,* 27 Land and Water L.Rev. at 111–112. Although the matter before the court grew out of government initiated litigation, the present controversy is solely a dispute between private PRPs.

In *United States v. Western Processing Co.,* 756 F.Supp. 1424, 1430 (W.D.Wash.1990)

the court observed that both the UCFA and the UCATA provide contribution protection to all settlors, but found that the UCFA "is most consistent with most modern comparative fault and contribution rules." That court reviewed the following four advantages of the UCFA approach:

(1) [UCFA] provides for equitable apportionment of responsibility, and where there is a partial settlement, the judgment is reduced by the proportionate fault of the settling defendant who is then discharged;

(2) complex partial settlements involving multiple parties, claims, or theories are more easily resolved (without the imprecision of allocation prior to trial by the court under [UCATA] );

(3) the need for a good faith hearing is eliminated as the proportionate credit is not based on the amount of the settlement;

(4) total settlement is encouraged after partial settlement as a culpable nonsettlor cannot escape responsibility when a settling defendant pays more than his fair share and cannot gamble on a jury verdict in view of a guaranteed credit; this serves also to deter wrongful conduct.

*Id.* at 1430–1431.

That court then proceeded to review the following three disadvantages of the UCFA approach:

(1) recovery of the exact amount of the total damages set by the trier of fact is entirely fortuitous when there has been partial settlement, as the nonsettlors pay only their fair share regardless of the amount of settlements paid; this can lead to

(2) impairment of a claimant's willingness to settle because of the uncertainty of the amount to be credited for the settlements;

(3) at trial, a plaintiff must not only advocate his freedom from fault, but also convince the trier of fact of the settlor[s] minimal fault. In complex cases the plaintiff may not have access to information that the settling defendant would have

---

**9.** The relevant text of CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1), has been previously set forth at n. 5, *supra.*

had, and a distortion could result from the settlor not defending his own interest. *Id.* at 1431. That court then opted for the UCFA approach. *Id.*

Judge Roszkowski also opted for the UCFA approach, reasoning that in CERCLA cases, the UCFA, rather than the UCATA should apply as "a uniform federal rule regarding contribution ... so that consistent principles of contribution and allocation of damages develop in CERCLA actions." *Allied,* 771 F.Supp. at 223, *citing Lyncott,* 690 F.Supp. at 1417.

In *Edward Hines Lumber Co. v. Vulcan Materials,* No. 85–C–1142, 1987 WL 27368, 1987 U.S.Dist. LEXIS 11961 (N.D.Ill. Dec. 4, 1987), parties sought court approval of settlement agreements in a CERCLA private party contribution action. In approving the settlements, Judge Aspen agreed that the UCFA encourages settlements and protects non-settlors in complex multi-defendant CERCLA litigation:

> By relieving a defendant from any liability to co-defendants, the rule allows the defendant to buy its peace from the plaintiff and thereby free itself completely from the litigation. Further, the rule protects non-settling defendants by assuring that their liability will reflect only their responsibility for the cleanup costs, regardless of the amount the settling defendant tendered to the plaintiff.

*Id.,* 1987 WL 27368 at *2, 1987 U.S.Dist. LEXIS 11961 at *5.

In *Allied,* the court likewise cited the twin UCFA advantages of 1) relieving the courts of the need to conduct fairness hearings, and of 2) built-in assurance of fairness to non-settlors: "The comparative fault rule protects non-settling defendants by assuring them that they will not be liable for more than their equitable share as finally determined at the close of litigation." 771 F.Supp. at 223. The *Comerica* court also noted that under UCFA, the plaintiff-proponent of the settlement claimant bears the risk that the ultimate liability of the settling defendant may exceed the settlement amount:

> It [the UCFA] does not, however, hang the non-settling defendants out to dry, and

negates the need for an evidentiary hearing to determine the fairness and good faith of the settlement. Since the claimant bears the risk that the settling defendant's proportionate share of the clean-up costs may be greater than the settlement amount, it will be in the best interests of the claimant to obtain a settlement that is closely related to the probable proportionate share for which the settling defendant would have been responsible.

*Comerica,* 769 F.Supp. at 1414.

In *American Cyanamid Co. v. King Industries, Inc.,* 814 F.Supp. 215, 217 (D.R.I. 1993), a private CERCLA contribution action seeking approval of settlements and dismissal of cross claims against the settling defendants, Senior District Judge Pettine approved the proposed settlements, and applied UCFA principles, noting:

> The UCFA precludes a non-settling defendant in an action in which it has a right of contribution from other responsible parties from asserting cross-claims for contribution against a settling defendant, but allows the non-settling defendant to offset its liability to the plaintiff by the settling defendant's equitable share of responsibility. UCFA § 6, 12 U.L.A. at 56 (Supp.1992).

Further, in *Lyncott,* the court also observed the UCFA advantage of not requiring a fairness hearing: "I also reject the Uniform Contribution Among Tortfeasors Act ... because it would require a fairness hearing in every case to decide if a settlement is in good faith." 690 F.Supp. at 1418.

In *Comerica,* the court noted that in addressing private settlements in CERCLA litigation, federal courts predictably apply the UCFA "for the reason that the principles of that model act are the most consistent with, and do the most to implement, the Congressional intent which is the foundation for CERCLA." 769 F.Supp. at 1414, *quoting Conservation Chemical,* 628 F.Supp. at 402; *see also Lyncott,* 690 F.Supp. at 1418; and *Allied,* 771 F.Supp. at 223.

The UCFA will better promote CERCLA's policy of encouraging settlements, while securing equitable apportionment of liability for Non-settlors. No good faith hearing to evaluate the settlement agreements is re-

quired under UCFA because its comparative fault rule is not based upon the amount of the settlement. Since SCA bears the risk that the Settlors' share of the remediation costs could be greater than the settlement amount, it is in SCA's best interests to negotiate a settlement which closely approximates the Settlors' reasonable share of the clean up costs.

Although there are disadvantages of adopting the UCFA approach, *see* pp. 534–35, *supra; see also Western Processing Co.,* 756 F.Supp. at 1431, the advantages outweigh those drawbacks. The plaintiff-proponent of the settlement may appropriately contemplate those imperfections in determining whether to propose settlement.

Accordingly, the court joins the expanding company of courts which have adopted UCFA principles in approving settlements between private parties in CERCLA actions.[10]

## CONCLUSION

For the foregoing reasons, the Joint Motion for Approval of Settlements is GRANTED. Accordingly:

1) the court finds that the settlements were entered into in good faith;

2) the Settlors, Allen County Motors, Inc.; The Crosby Group, Inc.; Deister Concentrator Co. Inc.; Wm. A. Didier & Sons, Inc.; Evans Products Co.; Federal–Mogul Corp.; Fort Wayne Clutch, Inc.; Fort Wayne Public Transportation Corp.; The Glidden Co.; Meek Mack, Inc.; Meyer Stamping & Manufacturing Co., Inc.; Ryder Truck Rental, Inc.; United Limo, Inc.; and Wayne/Scott

Fetzer Co. are hereby dismissed from SCA's Third Party action;

3) all counterclaims, cross-claims and fourth party claims which have been made or could be made against the Settlors by any person presently a party, in connection with the Third Party Complaint or the Consent Decree, are hereby discharged and/or barred; and

4) the liability of all defendants other than the Settlors shall be reduced by the amount of the Settlors' equitable share of liability, as determined later.

---

**10.** The example set out by Judge Pettine in *American Cyanamid, supra,* amply clarifies how the UCFA operates:

> A private party sues five defendants for contribution under § 113(f)(1) of CERCLA. Plaintiff seeks recovery for $100,000 for response costs. One defendant settles for $5,000. At trial, it is determined that each of the five original defendants are liable for an equitable share equaling 10% of the $100,000—or $10,000 per defendant. The plaintiff is found to be liable for 50%—or $50,000. The settling defendant is still responsible for only $5,000. The non-settling defendants, however, may reduce their

> collective share of liability by the amount of the settling defendant's equitable share—in this case, $10,000. Thus, the four non-settling defendants are responsible for $10,000 each, for a total of $40,000. The plaintiff bears the "loss" of $5,000 in contribution recovery as a result of compromising for less than the settling party's equitable share. Conversely, the plaintiff may reap any "windfall" from a settlement with one of the five defendants for more than $10,000, or more than the defendant's equitable share. That is the rub of the green. *Id.* at 218.