**COMERICA BANK–DETROIT,** Successor Trustee under the Graham John Graham Trust Agreement, Plaintiff,

v.

**ALLEN INDUSTRIES, INC.,** General Motors Corporation, American Renovating Company, Wyandotte Paint Products Company, Amchem Products, Inc., Emco Chemical, Inc., and Carl J. Schriber, and Elizabeth Graham Trust Under Agreement, Jointly and Severally, Defendants.

Civ. A. No. 86–CV–40205–FL.

United States District Court,
E.D. Michigan, S.D.,
at Flint.

July 19, 1991.

Martin Kimmel, Pontiac, Mich., Jeffrey K. Haynes, Bloomfield Hills, Mich., for plaintiff, Comerica Bank–Detroit.

Clayton F. Farrell, Daniel J. Fleming, Southfield, Mich., for Amchem.

Herbert G. Sparrow, III, Graham L. Teal, Detroit, Mich., for Wyandotte Paint.

Carl J. Schriber, pro per.

David L. Maurer, Elaine Black, Detroit, Mich., for Allen Industries.

Daniel McCarthy, Troy, Mich., for America Renovating Co.

John Scherbarth, Asst. Atty. Gen., Lansing, Mich., for State of Mich.

James J. Fausone, Detroit, Mich., for General Motors.

Barry L. King, Troy, Mich., for Emco Chemical.

James Ramer, Harbor Spring, Mich., for Elizabeth Graham.

Michael J. Hainer, Detroit, Mich., for Joan Graham.

NEWBLATT, District Judge.

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions for entry of judgment. The first is brought by Comerica Bank–Detroit (Comerica) to have the Court enter the consent decree between Comerica and General Motors (GM). A similar agreement has been offered for this Court's approval by the Attorney General of the State of Michigan (the State) and General Motors. On August 16, 1990, this Court acknowledged receipt of the motions and the proposed judgments and gave notice of its intention to sign and enter the judgments unless it was convinced that such entry would be inappropriate. Emco Chemical, Inc. and Allen Industries, Inc. responded by filing objections to the proposed judgments. Reply briefs have been filed addressing the arguments furnished in the objections. For the reasons stated below, both Joint Motions are GRANTED, and the objections of Allen are OVERRULED. The objection filed by Emco Chemical is MOOT.

Judgment is sought pursuant to Rule 54(b) of the Federal Rules of Civil Procedure which empowers district courts in multi-party or multi-claim cases to enter judgment against one party, or on one claim, "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

Under the Comerica/GM agreement, the parties to the settlement agreed that GM would be released from liability from all of Comerica's claims against GM, but in addition, Comerica and GM agreed between themselves that GM would be released from all the cross claims for indemnity brought against GM by the rest of the defendants in this case. The face of the State/GM agreement releases GM only from the claims brought by the State. Pursuant to § 9613(f)(2) [§ 113(f)(2) ] of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607, however, GM asserts that when a potential responsible

party reaches a settlement with either the United States Government or with a state government, the settling party obtains protection against claims for contribution that are brought by parties that have not yet settled.

Emco's objection merely states that it is willing to waive its objections if GM will acknowledge that GM's cross claim against Emco is dismissed along with the cross claim filed by Emco. Thus, the only objection that offers any substantive argument was filed by Allen.

### THE REQUIREMENTS OF RULE 54(b)

Allen first argues that entry of the order is inappropriate under Rule 54(b) because the Court cannot determine that there is no just reason for delay. Certain claims against GM will survive the proposed judgment, according to Allen.[1] The surviving claims represent potential future judgments which are also potential subjects for appeals processes separate from the judgment that Comerica and GM propose to enter pursuant to this joint motion.

■ The potential for piecemeal appeals provides a just reason for delaying judgment under the Rule 54(b) standards. Allen cites WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2654. "Rule 54(b) does not represent a departure from or abandonment of the fundamental principle against splitting a claim and determining cases at the appellate level in piecemeal fashion." § 2654. Allen argues, therefore, that avoidance of the risk of piecemeal appellate litigation provides just reason for delay.

■ The Court is not persuaded by this argument because it cannot perceive any risk that the parties to these settlement agreements will appeal this judgment. The parties have agreed to the terms of the settlement, and have moved jointly for the entry of this judgment. The only issue that might present itself for appeal at this time is the issue of contribution protection. Since this issue presents questions of statutory construction and consideration of general tort theory of joint tort-feasor liability, any appeal at this time would " 'not deal with the factual issues at the heart of the adjudicated claims,' " and is " 'sufficiently distinct to permit certification.' " *International Union of Elec., Radio and Machine Workers AFL–CIO, CLC v. Westinghouse Elec. Corp.*, 631 F.2d 1094 (3rd Cir.1980) *cert. denied* 452 U.S. 967, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981) (quoting district court's opinion). The inquiry into the issue of contribution protection would not "involve any duplication of effort if done separately" from the rest of the issues presented in this case. *Prudential Ins. Co. of America v. Curt Bullock Builders, Inc.* 626 F.Supp. 159, 169 (N.D.Ill.1985). Thus, the Court does not perceive any risk from piecemeal litigation at the appellate level, so the Court hereby determines that there is no just reason for delay. Thus, the requirements of Rule 54(b) do not prevent the entry of the proposed orders.

### GM'S LIABILITY UNDER THE CROSS CLAIMS

As stated above, the agreement between Comerica and GM provides GM with contribution protection from the other defendants in this matter, and although the State/GM agreement is silent as to contribution protection, GM asserts that § 113(f)(2) of CERCLA provides such protection to parties who settle with the government. The Court will now consider which, if any, of the cross claims survive the proposed judgments.

The terms of § 113(f)(2) make it clear that the cross claims do not survive the settlement between the State and GM. The statute provides as follows: "A person

---

1. Allen argues that all the cross claims against GM must survive the judgment because GM should receive *no* contribution protection, as discussed *infra*. In particular, Allen is concerned about its cross claim against GM to recover a share of the costs of performing the remedial investigation/feasibility study (RI/FS). On October 30, 1986, defendants Allen Industries, General Motors and American Renovating Company entered into a stipulation and order to conduct the study. Allen claims to have incurred costs in excess of $270,000, and the Stipulation and Order envisioned some sort of sharing of those costs. Allen Industries Objections to the Entry of Comerica/GM Judgment, at 11.

who has resolved its liability to the United States or a state in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." CERCLA § 113(f)(2).

Allen acknowledges that § 113(f)(2) does permit contribution protection in a situation like this where the defendant settles with the State. The presence of the government is not the only prerequisite, however, according to Allen. There must be an administrative or judicial evaluation of the reasonableness of the settlement, and the mere recitation of the parties' good faith is insufficient. The court in *United States v. Moore,* 703 F.Supp. 455 (E.D.Va.1988) refused to grant § 113(f)(2) contribution protection to the defendant, the Department of Defense, when it settled with the EPA, since the settlement had not received administrative approval. The court concluded that there was too much opportunity for collusion between the two government agencies.

Allen argues here that there has been no evaluation of the reasonableness of this settlement, so GM should receive no contribution protection under § 113(f)(2). Allen calls for an "in depth evaluation" of this proposed settlement, especially considering the public interest. Other factors to be considered include:

> A comparison of the strengths of plaintiffs' case versus the amount of the settlement offer; the likely complexity, length, and expense of the litigation; the amount of opposition to the settlement among affected parties; the opinion of competent counsel; and the stage of the proceedings and the amount of discovery already taken at the time of the settlement.

*In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1028 (D.Mass.1989).

■ The Court feels that an evidentiary hearing to explore the fairness and good faith nature of this settlement "is not required by CERCLA or the implementing regulations." *Edward Hines Lumber Company v. Vulcan Materials Co.,* 1987 WL 27368 (N.D.Ill. Dec. 4, 1987), *aff'd,* 861

F.2d 155 (7th Cir.1988). Parties enter into settlements to avoid the time and costs of preparing for trial. Requiring evidentiary hearings before entering consent judgments would compel litigation of such issues as "the risk of victory or defeat, the risk of a high or low verdict, the unknown strengths or weaknesses of the opponent's case, the inexact appraisal as to the elements of danger, the defendant's solvency and the amount of insurance coverage." *Donovan v. Robbins,* 752 F.2d 1170, 1181 (7th Cir.1985). This Court is uncertain what standards could be applied to determine whether the evidence shows fairness, reasonableness and consistency with the goals of CERCLA. The preparation for such "mini-trials," and the uncertainty of the outcomes, would discourage parties from settling, and this would be contrary to CERCLA's policy of encouraging early settlement.

■ The Court should not act as a rubber stamp, but a detailed investigation of the fairness of the settlement, including a full blown evidentiary hearing, is not necessary or appropriate here. *Kelley v. Thomas Solvent Co.,* 717 F.Supp. 507 (W.D.Mich. 1989).

> Where a court is reviewing a consent decree to which the government is a party, the balancing of competing interests affected by a proposed consent decree "must be left, in the first instance, to the discretion of the Attorney General." *United States v. Bechtel Corp.,* 648 F.2d 660, 666 (9th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981); *see also Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 81 S.Ct. 1309, 1313, 6 L.Ed.2d 604 (1961) (the government has discretion over accepting a consent decree unless there is bad faith or malfeasance); *United States v. Associated Milk Producers, Inc.,* 534 F.2d 113, 117 (8th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976) (Attorney General must retain discretion in "controlling government litigation and in determining what is in the public interest").

*Kelley,* 717 F.Supp. at 515–16. There has been 3½ years of litigation and discovery in this case. GM is paying over ½ of the response costs incurred so far. The Court does not perceive that there is a sweet heart deal in the making here. Allen has not alleged, and the Court is not aware of, any bad faith or malfeasance that would strip the government of its discretion.

> And "where there has been arms length bargaining among the parties [and] sufficient discovery has taken place to enable ... counsel to evaluate accurately the strengths and weaknesses of the plaintiff's case ... there is a presumption in favor of the settlement," *Wellman v. Dickinson,* 497 F.Supp. 824, 830 (S.D.N.Y.1980), *aff'd* 647 F.2d 163 (2d Cir.1981), particularly where "a government agency committed to the protection of the public interest" has participated in and endorsed the agreement. *Id.*

*City of New York v. Exxon Corp.,* 697 F.Supp. 677, 692 (S.D.N.Y.1988). With this presumption, and the government's discretion, in mind, the Court finds the settlement between the State and GM to be fair, reasonable and consistent with CERCLA's goals of making additional moneys available to fund the clean-up of the site, and of encouraging settlement with the government that is reflected in § 113(f)(2).

One of Allen's cross claims against GM, for which Allen makes a special plea, is based on the 1986 Stipulation and Order. In order to be extinguished, the claim at issue must have been addressed in the settlement. CERCLA § 113(f)(2). Allen argues that this particular cross claim cannot be extinguished under the contribution protection doctrine because it is not a matter addressed in the settlement.

> Clearly, such costs, already incurred by Allen pursuant to the Order entered by the Court, are costs that the State has not incurred and therefore were not accounted for in the settlement between the State and General Motors.... Accordingly, Allen's claim for indemnification against General Motors should *not* be dismissed because General Motors has settled separate and distinguishable claims with the State.

Allen's Objections to the Entry of State/GM Judgment, at 6.

GM disputes that the cross claim to recover the RI/FS costs is separate and distinct from the State claims resolved by the judgment. "The Stipulation and Order would not exist *but for* the claims filed by the State against Allen, American Renovating, and General Motors. The State's claims form the basis for demanding that an RI/FS be conducted." GM's Reply to Allen's Objections to Entry of State/GM Judgment, at 11. In addition, GM argues that the settlement covers all CERCLA claims, including response costs.

Examples of response costs that can be recovered under CERCLA include those costs incurred pursuant to conducting the following:

> "*Investigations,* ... and other information gathering necessary or appropriate to *identify the existence and extent of the release or threat thereof,* the source and nature of the hazardous substances, pollutants and contaminants involved, and the extent of the danger to the public health, welfare or the environment.... Engineering, architectural, and *other studies* or *investigations necessary or appropriate to plan and direct response action.*"

GM's Reply to Allen's Objection to Entry of State/GM Judgment, at 14 (citing EPA Memorandum on Recovery Action under CERCLA, August 26, 1983, p. 18) (emphasis added by GM); *see also Cadillac Fairview/California, Inc. v. Dow Chemical Co.,* 840 F.2d 691, 695 (9th Cir.1988) (" 'costs of response' includes costs incurred 'to monitor, assess, and evaluate the release of hazardous substances' "). Since costs associated with the RI/FS fit within the definition of response costs, GM argues that the costs of performing the RI/FS in this case are matters addressed in the settlement.

■ The judgment releases GM not only "from all claims which are or which could have been set forth in the Plaintiff's Complaint" but also from all claims "arising out of the transactions or occurrences on which

the Complaint was based...." *See* Proposed Judgment, at 3. The Stipulation and Order was a transaction entered into between the defendants to address the problems of conducting a remedial investigation/feasibility study related to the property that is the subject of the State's Complaint against GM and the rest of the defendants. As such, it has been addressed in the proposed settlement. Whether Allen is left holding the bag of costs from conducting the study may depend upon the application of other theories of contribution between joint tort-feasors. *See infra.* It is the finding of this Court that Allen's cross claim against GM based on the October 30, 1986 Stipulation and Order is addressed in the settlement, and is therefore dismissed pursuant to the contribution protection provisions of § 113(f)(2) of CERCLA.

■ § 113(f)(2) does not apply to private settlements, however. "A person who has resolved its liability *to the United States or a state* in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." CERCLA § 113(f)(2), 42 U.S.C. 9613(f)(2) (emphasis added). The plain language of the statute limits contribution protection to defendants who settle their differences with a governmental body. It does not discuss settlement between private parties. In support of their claim for contribution protection, Comerica and GM cite *City of New York v. Exxon Corp.*, 697 F.Supp. 677 (S.D.N.Y.1988), *Lyncott Corp. v. Chemical Waste Management, Inc.*, 690 F.Supp. 1409 (E.D.Pa.1988), and *Edward Hines Lumber Company v. Vulcan Materials Company*, 1987 WL 27368 (N.D.Ill. Dec. 4, 1987). These cases are distinguishable.

In *City of New York*, the city may not have been the state when it settled with the defendant in the case, but the court engaged in a three page exploration of whether the word "State" in the statute could include the City of New York. *City of New York*, 697 F.Supp. at 683-86. The court concluded,

> In effect, the state has expressed its approval of the City's role in this litiga-

tion, and the judgment reflects a comprehensive settlement worked out between the State, the City, and the settlers. To deny the settling parties the statutory benefits of section 113(f)(2) under these circumstances would be unduly formalistic.

*Id.* at 686. In the case at bar, Comerica is a completely private entity with no relation to the state. *City of New York* cannot be used to stretch § 113(f)(2)'s protection to private parties who settle their CERCLA dispute.

In *Lyncott Corp.*, the settling parties were intimately related as the result of a complex asset acquisition. One of the parties was responsible for funding the entire clean-up. In addition, the case has been criticized for ignoring the express language of § 113(f)(2). *In re Acushnet River & New Bedford Harbor*, 712 F.Supp. 1019, 1026, n. 10 (D.Mass.1989). A consideration of the plain language is necessary before deciding to apply § 113(f)(2) to totally private settlements. In addition, Comerica has not offered to make itself liable for the entire clean-up.

The final case cited by Comerica and GM, *Edward Hines Lumber*, is plainly distinguishable because the court provided contribution protection, not based on § 113(f)(2), but based on common law tort principles, and the Uniform Comparative Fault Act. The implications of *Edward Hines Lumber* will be discussed below, but for the purposes of analyzing whether § 113(f)(2)'s contribution protection provisions apply to private party settlements in CERCLA actions, *Edward Hines Lumber* is inapplicable. The plain language of the statute limits § 113(f)(2) to settlements between a private party and a governmental body like a state or the United States. The cases cited by Comerica and GM do not support an expansion beyond that plain meaning.

### CONTRIBUTION PROTECTION OUTSIDE THE SCOPE OF § 113(f)(2)

Michigan has a contribution-release statute, M.C.L. § 600.2925d.

When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 or 2 or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.

(b) It reduces the claims against other tort-feasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

Michigan's policy of encouraging settlements plainly provides contribution protection to those tort-feasors who settle with the claimant. To prevent double recovery, the liability of the defendant non-settling tort-feasors is reduced by the amount of the settlement. Thus, the non-settling defendants bear the risk that the ultimate liability of the settling defendant may exceed the settlement amount.

Federal courts have taken a different approach to comparative fault and contribution in CERCLA litigation by applying the Uniform Comparative Fault Act "for the reason that the principles of that model act are the most consistent with, and do the most to implement, the Congressional intent which is the foundation for CERCLA." *United States v. Conservation Chemical Co.*, 628 F.Supp. 391, 402 (W.D.Mo.1985). Section 6 of the Uniform Comparative Fault Act provides as follows:

A release, covenant not to sue, or similar agreement entered into between a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other person liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation....

Under the Uniform Act, then, the claimant bears the risk that the ultimate liability of the settling defendant may exceed the settlement amount.

*Conservation Chemical* was decided before the passage of the amendments to CERCLA in which § 113(f)(2) was added to the Act, but subsequent cases have applied the Uniform Act as well. "I conclude, as did Chief Judge Wright in *Conservation Chemical,* that the principles in the Uniform Comparative Fault Act are the most consistent with CERCLA." *Lyncott,* 690 F.Supp. at 1417–18. The court in *Edward Hines Lumber* also endorsed the use of the Uniform Act. "[T]he rule protects non-settling defendants by assuring that their liability will reflect only their responsibility for the clean-up costs, regardless of the amount the settling defendant tendered to the plaintiff." *Edward Hines Lumber,* 1987 WL 27368.

■ This Court adds its voice to the growing chorus of federal courts which have applied the Uniform Comparative Fault Act to CERCLA settlements, and rejects the approach taken by the Michigan statute, at least as it applies to CERCLA cases. "When, as here, a cause of action arises under federal law, the 'scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law.'" *Edward Hines Lumber, supra,* n. 2 (quoting *Donovan v. Robbins,* 752 F.2d 1170, 1179 (7th Cir. 1985)). By protecting settling defendants from claims for contribution, it advances CERCLA's policy of encouraging settlements. It does not, however, hang the non-settling defendants out to dry, and negates the need for an evidentiary hearing to determine the fairness and good faith of the settlement. Since the claimant bears the risk that the settling defendant's proportionate share of the clean-up costs may be greater than the settlement amount, it will be in the best interests of the claimant to obtain a settlement that is closely related to the probable proportionate share for which the settling defendant would have been responsible.

As discussed above, the settlement and proposed judgment between the State and GM considered and addressed Allen's cross claim against GM that was based on the October 1986 Stipulation and Order. Since § 113(f)(2) expressly relieves the settling defendant from liability "for claims for contributions regarding matters addressed in the settlement," the claim for contribution based on the Stipulation and Order was extinguished.

The Uniform Comparative Fault Act provides broader contribution protection than § 113(f)(2) because it "discharges [the settling defendant] from *all* liability for contribution." Uniform Comparative Fault Act (emphasis added). The RI/FS was a cost of clean-up, and had GM not settled, it would have been liable for that cost. With the settlement, however, its liability is discharged.

 Once again, however, the Uniform Comparative Fault Act places the risk that the settlement amount will be less than the actual liability of the settling defendant on the claimant. Thus, Comerica's recovery, if there is any, will be reduced by whatever amount is determined to be GM's liability, including GM's share of the costs of performing the RI/FS.[2] Since Comerica bears the risk in its settlement with GM, Allen is *not* necessarily left holding the bag. All this will be determined later, however, when it finally comes time to apportion the liability.

One final consideration is Emco Chemical's objections. Emco is not a defendant in the suit brought by the State. Consequently, the Court need only consider Emco's objections to the Comerica/GM settlement. "If General Motors Corporation will acknowledge that its crossclaim against Emco Chemical, Inc. is similarly dismissed, Emco Chemical, Inc. withdraws its motion." Emco's Objection to Entry of Judgment. Section 4 of the Uniform Comparative Fault Act precludes the settling defendant from seeking contribution for any excess paid beyond its proportionate share. Since the Court is relying on the principles set forth in the Uniform Act, GM's cross claim for contribution from Emco is dismissed pursuant to Section 4 of the Act, and Emco's objection is MOOT.

## CONCLUSION

The Court finds that there is no risk of piecemeal litigation, and therefore no just reason for delay. The Rule 54(b) requirements are met, then, with an express direction by this Court for the entry of judgment. The express language of § 113(f)(2) of CERCLA provides GM with contribution protection from all cross claims. No evidentiary hearing is necessary before the entry of this judgment, and the Court finds the terms of both settlements to be fair, reasonable and consistent with the goals of CERCLA. The plain language of § 113(f)(2) limits that provision's contribution protection to settlements made with the government, but the federal common law's use of the Uniform Comparative Fault Act provides contribution protection to GM in the case of its settlement with Comerica. Allen's cross claim for recovery of the costs of performing the RI/FS pursuant to the October 1986 Stipulation and Order was considered, addressed and discharged by the State/GM settlement, and all GM's liability, including liability arising from the Stipulation and Order, is discharged under the terms of the Uniform Act. Thus, Allen's cross claim is discharged under both settlements and proposed judgments, but Comerica bears the risk that GM's ultimate liability, including any liability for the costs of the RI/FS, may exceed the amount of the settlement. All claims are dismissed against GM. Concomitantly, GM's cross claims for contribution against all other defendants are dismissed.

The Joint Motion for the Entry of Judgment brought by the State of Michigan and General Motors is GRANTED. The Joint Motion for the Entry of Judgment brought by Comerica and General Motors is similar-

---

**2.** The terms of § 113(f)(2) do *not* place the risk on the claimant, however. The liability of the non-settling defendants is reduced only by the amount of the settlement. So, the State does not bear the risk that the settlement amount may be less than the amount of GM's liability.

ly GRANTED. Allen Industries' are OVERRULED. Emco's objection is MOOT. General Motors' cross claims against all defendants are DISMISSED, and General Motors is hereby DISMISSED from both cases, 86–CV–40205–FL and 86–CV–40206–FL. The Court expressly ORDERS the entry of judgment.

SO ORDERED.