**BARTON SOLVENTS, INC., Plaintiff,**

v.

**SOUTHWEST PETRO–CHEM, INC., Defendant,**

v.

**AGCO·CORP. OF DELAWARE, et al., Third–Party Defendants.**

**Civ. A. No. 91–2382–GTV.**

United States District Court, D. Kansas.

Sept. 30, 1993.

---

Mark D. Hinderks, Roger D. Stanton, M.J. Willoughby, Stinson, Mag & Fizzell, Overland Park, KS; and David R. Tripp, Richard L. Green, Stephen J. Owens, and Jeffrey A. Befort, Stinson, Mag & Fizzell, Kansas City, MO, for Barton Solvents, Inc.

James T. Price, Mark A. Thornhill, J. Bradley Leitch, Teresa A. Woody, Spencer, Fane, Britt & Browne, Kansas City, MO; and David C. Linder, Zelle & Larson, Minneapolis, MN, for Southwest Petro–Chem, Inc.

William F. Bradley, Jr., Hinkle, Eberhart & Elkouri, Wichita, KS, for Universal Lubricants, Inc.

Christopher M. McDonald, Shook, Hardy & Bacon, Kansas City, MO; and David Overlock Stewart, J. Daniel Berry, Thomas B. Smith, and Ropes & Gray, Washington, DC, for Rubbermaid–Windfield, Inc.

Lester C. Arvin, Arvin & Arvin, Wichita, KS; Brian E. Gardner, Stanley A. Reigel, Patricia A. Rosa, Morrison & Hecker, Kansas City, MO, Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David R. Tripp, Richard L. Green, and Stephen J. Owens, Stinson, Mag & Fizzell, Kansas City, MO, for Barton Solvents, Inc.

Douglas D. Depew, Depew Law Firm, Neodesha, KS, for Airosol, Inc.

Eric C. Sexton, Beckett, Lolli, Bartunek & Beckett, William T. Session, Brian Jones, The Session Law Firm, Kansas City, MO; and George A. Phair, Conoco, Inc., Houston, TX, for Ameron, Inc., EI DuPont De Nemours and Co., Continental Oil Co. and Goodyear Tire & Rubber Co.

Douglas P. McLeod, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO; and David R. Erickson, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, for Beech Aircraft Corp.

Robert F. Rowe, Jr., McAnany, Van Cleave & Phillips, P.A., Lenexa, KS; Lester C. Arvin, Arvin & Arvin, Wichita, KS; Brian E. Gardner, Stanley A. Reigel, Patricia A. Rosa, Morrison & Hecker; and Rosemary Podrebarac, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Oliver Elliott, Ronald Coleman and Nat. Spencer, Inc.

Martin R. Ufford, Redmond, Redmond & Nazar, Wichita, KS, for Wichita Wire, Inc.

William J. Denton, William F. Ford, William F. Ford, Jr., Michael J. Abrams, Gage & Tucker, Kansas City, MO, for Gen. Motors Co.

Jeffrey L. Kennedy, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for Glickman, Inc.

James R. Fleetwood, Bradley E. Haddock, and Thomas A. Loftus, III, Koch Industries, Inc., Wichita, KS, for Koch Industries, Inc., and Koch Engineering Co.

Richard W. Hird, James P. Zakoura and William F. Watkins, Smithyman & Zakoura, Chtd., Overland Park, KS, for Moline Paint Mfg. Co.

Charles P. Efflandt, Foulston & Siefkin, Wichita, KS, for New Coleman Holdings Inc. and the Boeing Co.

William J. Denton, William F. Ford, William F. Ford, Jr., Michael J. Abrams, Gage & Tucker, Kansas City, MO, Peter B. Freeman, Ellen L. Partridge, Jenner & Block, Chicago, IL, Robert P. Riordan, Husch & Eppenberger, Kansas City, MO; and Kathleen M. Whitby, St. Louis, MO, for Tenneco Oil Co. and Texaco, Inc.

Thomas E. Rice, Jr., John W. Cowden, Baker, Sterchi & Cowden and Deborah T. Welsh, The Session Law Firm, Kansas City, MO, for Cessna Aircraft Co.

Jennifer S. Graham, Lathrop & Norquist, Overland Park, KS; and Philip J. Donnellan, Jonathan R. Haden, and Gary D. Justis, Lathrop & Norquist, Kansas City, MO, for Union Pacific Resources.

William F. Bradley, Jr., Hinkle, Eberhart & Elkouri, Wichita, KS, for Universal Motor Oil Co., Inc.

Thomas J. Lasater, Thomas D. Kitch, and Scott D. Jensen, Fleeson, Gooing, Coulson & Kitch, Wichita, KS, for Wilko Paint, Inc.

Jack L. Lively, Hall, Levy, Lively, DeVore & Bell, Coffeyville, KS, for Cliftco, Inc. and Gertrude M. Clift.

James C. Burwell, pro se.

John W. Cowden, Baker, Sterchi & Cowden, Kansas City, MO; and Kathleen M. Whitby, St. Louis, MO, for Texaco Refining and Marketing, Inc.

### *MEMORANDUM AND ORDER*

VAN BEBBER, District Judge.

This case is before the court on the motion filed by Third–Party Plaintiffs and six of the Third–Party Defendants ("Settlors") to dismiss with prejudice existing cross-claims and to bar future claims by any party against the Settlors (Doc. 694), and a supplemental motion for the same order to apply to two additional Third–Party Defendants (Doc. 754). Plaintiff Barton Solvents, Inc., and other Third–Party Defendants ("Non–Settlors") filed responses which raised objections to the motions. After a hearing on September 17, 1993, the court took the matter under advisement. For the reasons explained in this memorandum, the court will grant the motions of the settling parties, approve the settlements, and issue an order dismissing cross-claims and barring future claims against the Settlors when the court has been informed that all the settlement agreements attached to the motions have been executed and settlement funds deposited into the registry of the court.

## I. BACKGROUND

Plaintiff Barton Solvents, Inc. brought this action on October 13, 1991, against Southwest Petro–Chem, Inc. under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA"). Barton Solvents seeks recovery of all response costs it allegedly has incurred or will incur in cleaning up contamination at the Barton Solvents Site in Valley Center, Kansas. The site had been a former drum cleaning facility operated by Drumco, Inc., a corporation now dissolved. Barton Solvents has entered into a Consent Agreement and Consent Order with the Kansas Department of Health and Environment (KDHE) relating to the investigation and clean-up of the Site.

Southwest Petro–Chem filed third-party complaints asserting claims for contribution against twenty-eight third-party defendants generally alleging that they had deposited materials at the site. On April 5, 1993, Barton amended its complaint and joined Oliver Elliott and National Spencer, Inc. as additional defendants. On February 19, 1993, the court entered an order in which all third-party defendants, in general, were deemed to have filed cross-claims against each other.

Southwest, Oliver Elliott, Ronald Coleman,[1] and National Spencer, Inc. ("Settling Third–Party Plaintiffs") have joined together to reach settlements with the following third-party defendants: Beech Aircraft Corporation, Cessna Aircraft Corporation, Koch Industries, Inc., Koch Engineering, Co., Inc., Rubbermaid Specialty Products, Inc., Union Pacific Resources Company, Airosol, Inc., and Tenneco Oil Company ("Settlors"). The settlement agreements basically provide that each Settlor pay an established consideration to the Settling Third–Party Plaintiffs as a group, and that the Settlors and Settling Third–Party Plaintiffs will dismiss their claims against each other and not sue each other in the future.

The agreements recite that the Settlors have disclosed to the Settling Third–Party Plaintiffs all information available to them regarding their business transactions with the former owner of the site and the nature of the materials handled at the site. The agreements also contain a new-information "reopener" provision. The agreements further provide that the settlement funds accumulated by the Settling Third–Party Plaintiffs will be used only to clean up the Barton Solvents Site, or to discharge liability to Barton relating to that clean-up, and that the funds will be returned to the Settlors if none of the Settling Third–Party Plaintiffs are found liable or if their liability is limited to their equitable share of response costs incurred at the site. Finally, the settlement agreements are contingent upon the court dismissing all claims against the Settlors by Non–Settlors in this action, and barring all parties in this action from asserting claims against the Settlors in the future.

## II. DISCUSSION

Both the Settlors and Non–Settlors have raised various issues relating to the settlement agreement and the proposed order to dismiss claims and bar future claims against the Settlors. These issues, arranged by topic, are addressed in the following discussion.

### A. Court's Authority to Dismiss Existing Claims and Bar Future Claims

■ Federal courts have often ordered dismissal and bar of cross-claims against settling parties in order to facilitate settlement in environmental clean-up cases. *See, e.g., American Cyanamid Co. v. King Industries, Inc.,* 814 F.Supp. 215, 219 (D.R.I.1993); *City and County of Denver v. Adolph Coors Company,* 829 F.Supp. 340 (D.Colo.1993); *Comerica Bank–Detroit v. Allen Industries, Inc.,* 769 F.Supp. 1408, 1414–16 (E.D.Mich.1991); *Allied Corp. v. Acme Solvent Reclaiming, Inc.,* 771 F.Supp. 219, 222 (N.D.Ill.1990).

CERCLA expressly provides that parties who settle with the United States or any state are free from claims for contribution. 42 U.S.C. § 9613(f)(2). That section, howev-

---

1. Ronald Coleman is a third-party defendant who allegedly was involved in either the ownership or operation of the property at the time hazardous substances were deposited there. He has not been named as a defendant by Barton and is therefore not a third-party plaintiff. He has joined with the three existing third-party plaintiffs, however, for purposes of this settlement.

er, does not apply to private settlements. Nevertheless, federal courts have long recognized a strong interest in promoting settlement, especially in complex matters such as CERCLA claims. *See TBG Inc. v. Bendis,* 811 F.Supp. 596, 604 n. 14 (D.Kan.1992) ("[s]trong federal policy supports settlement of complicated multiparty litigation"); *Allied Corp. v. Acme Solvent Reclaiming, Inc.,* 771 F.Supp. 219, 222 (N.D.Ill.1990) (strong federal interest in promoting settlement in complex matters like CERCLA cases; cross-claim bar order needed to encourage defendants to settle).

In addition to these policy considerations, CERCLA also grants to courts broad powers to allocate clean-up costs using "such equitable factors as the Court determines are appropriate." 42 U.S.C. § 9613(f)(1). It is therefore clear that the court has the authority to enter the type of dismissal and bar order being requested here.

■ Non–Settlors[2] argue that the court should not dismiss their cross-claims against the Settlors because the settlements do not further CERCLA's two primary goals: to achieve prompt clean-up of hazardous waste sites, and to equitably apportion the costs of the clean-up to those responsible for the contamination. *See United States v. Cannons Engineering Corp.,* 899 F.2d 79, 90–91 (1st Cir.1990); *City and County of Denver v. Adolph Coors Company,* 829 F.Supp. 340 at 344 (D.Colo.1993).

The Non–Settlors contend that the first goal is not advanced by the settlements because Barton is already operating under a Consent Agreement and Consent Order with KDHE and has already begun the required response actions. This argument, however, reflects too narrow a view of CERCLA's goal to clean up hazardous waste sites, and gives too little weight to the strong public policy reasons for promoting settlement discussed earlier. The process of effectuating a clean-up of a hazardous waste site involves far more than merely completing the physical

remedies. Substantial sums of money have been and continue to be spent by the thirty parties to this litigation, but none of this money is being expended directly to clean up the site. Minimizing these litigation-related expenditures so that more resources will be available for actual clean-up is no doubt an important goal of both CERCLA and the federal courts generally. This court agrees with the analysis of the court in *United States v. SCA Services of Indiana, Inc.,* 827 F.Supp. 526 (N.D.Ind.1993), which concluded:

> In all Superfund litigation before this court, as much of the PRP's [potentially responsible parties'] environmental liability response resources as are necessary and appropriate will be spent cleaning up hazardous waste sites; inordinate amounts of those resources will not be spent on legal fees and related costs not directly associated with remedying the sites.

*Id.* at 532.

The Non–Settlors further argue that they will be unfairly prejudiced because the cross-claim bar is contrary to the goal of allocating clean-up costs among the responsible parties. This argument is rejected. As explained in more detail below, under the proportionate credit approach of the Uniform Comparative Fault Act ("UCFA"), which this court adopts, the share of liability of the Non–Settlors is not increased by these settlements.

For all the reasons explained above, the court finds both the authority and compelling reasons for issuing a dismissal and bar order in connection with this type of settlement.

### B. Return of Settlement Funds

The settlement agreements at issue in this case are not typical, in that they are between third-party plaintiffs and third-party defendants. Since the liability of the third-party plaintiffs has not yet been established, the settlement agreements provide that the settlement funds will be returned if none of the third-party plaintiffs are found liable, or if their liability is not joint and several. The

---

**2.** The arguments of Non–Settlors are derived from the Responses filed by New Coleman Holdings Inc. and Boeing Co. (Doc. 753), Barton Solvents, Inc. (Doc. 756), and Glickman, Inc. (Doc. 765). For purposes of convenience and clarity, these arguments will be referred to in this memorandum and order as simply those of the Non–Settlors, even though the court recognizes that these Responses do not necessarily represent the views of all Non–Settlors.

potential that the settlement funds could be returned to the Settlors has led to objections by the Non–Settlors and by plaintiff Barton Solvents.

The Non–Settlors argue that if the third-party plaintiffs are found not liable, it will have been through the efforts of the Non–Settlors. The Settlors, however, would reap the benefit from such a result without having to shoulder any of the litigation costs.

This argument is unconvincing. To prohibit these parties from settling simply because all third-party defendants are not also settling would be contrary to the public policy goals of encouraging settlement. The alternative, permitting settlement but not allowing a refund if the third-party plaintiffs are ultimately found not liable, is grossly unfair. The Settlors are all third-party defendants whose liability in this suit is derived from that of the third-party plaintiffs. Any settlement agreement that would not provide for refund of the funds should the third-party plaintiffs not be found liable would unnecessarily permit a potential windfall for the third-party plaintiffs.

Barton does not directly object to the provision for possible refund of the settlement funds. Barton does argue, though, that in such an event Barton should be allowed to seek contribution from the Settlors directly. While Barton is precluded from taking such an action in this case since the deadline pursuant to the Scheduling Order has passed, it apparently wants the option to pursue such claims in the future should the named defendants in this action be found not liable.

As the plaintiff in this action, Barton made the tactical decision not to sue the Settlors and other third-party defendants. In effect, Barton has chosen its remedy by suing only the defendants and placing the burden on the defendants to bring into this action other parties who may share in liability. Since Barton has made the choice, it must live with it. The court finds that the bar order in connection with the settlement agreements should be a complete one and that it should apply to all future claims which might be asserted against the Settlors by any other parties in this litigation, including plaintiff

Barton. To hold otherwise would remove the principal incentive for settling, because the Settlors would have no assurance that they are permanently removed from this litigation.

## C. Use of Settlement Funds

The settlement agreements provide that settlement funds are to be used to defray costs incurred in connection with "covered matters," defined in the agreements as "costs incurred or to be incurred at the Site as a result of Barton Solvents' performance of obligations pursuant to" the Consent Agreement and Consent Order between Barton and KDHE. The agreement then lists various costs and activities to be included within this definition, and it includes the category of "other recoverable response costs." Barton is concerned that this category within "covered matters" could permit settlement funds to be used for response costs unrelated to remediation of the Site, namely third-party plaintiffs' recoverable attorney fees.

■ The Tenth Circuit has recently held that litigation attorney fees are not recoverable as response costs and that nonlitigation attorney fees are recoverable only if they are necessary to the containment and clean-up of hazardous releases. *FMC Corp. v. Aero Industries, Inc.,* 998 F.2d 842, 847–48 (10th Cir.1993). This decision should eliminate any possibility that settlement funds will be used under the justification of "recoverable response costs" for any purpose other than remediation of the Site.

In order to alleviate any concerns over the use of settlement funds, the court finds that the funds should be deposited into the registry of the court, to be held in an interest bearing account until the liability issues in this case have been resolved. Deposits into and disbursements from this account shall be made in accordance with D.Kan. Rule 126.

## D. Reducing the Non–Settlors' Liability

■ The next issue to be resolved is the method to be used to reduce the liability of the Non–Settlors. As a preliminary matter, the court notes that CERCLA is silent as to the applicable method to be used in private

348

party settlements. Likewise, the determination is not controlled by state law, but is rather within the purview of federal common law. *See Comerica Bank–Detroit v. Allen Industries, Inc.,* 769 F.Supp. 1408, 1414 (E.D.Mich.1991).

■ A review of the reported cases involving private party CERCLA settlements shows that nearly all courts addressing the issue of reducing non-settling parties' liability have opted for the approach set out in the Uniform Comparative Fault Act (UCFA). For the reasons explained below, this court also adopts that approach.

The UCFA expressly provides for application of comparative fault, and would reduce the Non–Settlors' liability by the amount of the Settlors' equitable share of the obligation. Thus, the liability of the Non–Settlors is determined without regard to the actual dollar amounts of the settlements. *Allied Corp. v. Acme Solvent Reclaiming, Inc.,* 771 F.Supp. 219, 223 (N.D.Ill.1990). Section 6 of the UCFA provides as follows:

A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation ... .

The alternative approach most often considered is that set forth in the Uniform Contribution Among Tortfeasors Act (UCATA), sometimes referred to as the "pro tanto" approach. Under the UCATA, the liability of non-settling defendants is reduced by the dollar amount stipulated by the release, or the amount of the consideration paid for it, whichever is greater. UCATA § 4, 12 U.L.A. 57, 98 (1975).

The court in *United States v. Western Processing Co.,* 756 F.Supp. 1424, 1430 (W.D.Wash.1990) found that the UCFA "is most consistent with most modern comparative fault and contribution rules." That court reviewed four advantages to the UCFA approach:

(1) [UCFA] provides for equitable apportionment of responsibility, and where there is a partial settlement, the judgment is reduced by the proportionate fault of the settling defendant who is then discharged;

(2) complex partial settlements involving multiple parties, claims, or theories are more easily resolved (without the imprecision of allocation prior to trial by the court under the pro tanto theory);

(3) the need for a good faith hearing is eliminated as the proportionate credit is not based on the amount of the settlement;

(4) total settlement is encouraged after partial settlement as a culpable nonsettlor cannot escape responsibility when a settling defendant pays more than his fair share and cannot gamble on a jury verdict in view of a guaranteed credit; this serves also to deter wrongful conduct.

*Id.* at 1430–31.

Similar advantages have been found by other courts adopting the UCFA approach. *See, e.g., American Cyanamid Co. v. King Industries, Inc.,* 814 F.Supp. 215, 217 (D.R.I. 1993) (allows non-settling defendant to offset its liability to the plaintiff by the settling defendant's equitable share of responsibility); *Allied Corp.,* 771 F.Supp. at 223 (relieves courts of need to conduct fairness hearings and assures fairness to non-settlors); *Comerica,* 769 F.Supp. at 1414 (UCFA does not "hang the non-settling defendants out to dry" since settling plaintiff bears the risk that the settling defendant's proportionate share of the clean-up costs may be greater than the settlement amount.); *Lyncott Corp. v. Chemical Waste Management, Inc.,* 690 F.Supp. 1409, 1418 (E.D.Pa.1988) (no fairness hearing required); *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 1987 WL 27368, at *2 (N.D.Ill. Dec. 4, 1987) (protects non-settling defendants by assuring that their liability will reflect only their responsibility for the cleanup costs).

The UCFA approach does have some disadvantages. The primary concern is that the tenor of the litigation may be affected resulting in a greater burden being placed on the Non–Settlors. Since the Settling Third–Party Plaintiffs bear the risk that they settled

for too small an amount, and potentially could reap some benefits if the settlement amounts were greater than the Settlors' equitable share of responsibility, the incentive for the Third–Party Plaintiffs will be to try to minimize the fault attributable to the Settlors. Likewise, the Non–Settlors, as would be the case anyway, will try to maximize that liability. The difference is that the Settlors will be absent from the trial and information otherwise available may be lacking.

The court is convinced that this will not prove to be a significant disadvantage to the Non–Settlors. The settlement agreements call for the Settlors to provide relevant information to the Third–Party Plaintiffs which presumably would be discoverable by the Non–Settlors. Further, the advantages of the UCFA approach to the Non–Settlors far outweigh this potential concern.

The Non–Settlors have argued that if the court dismisses and bars the cross-claims, it should require some evidence that the settlement is fair and reasonable. As discussed earlier, one of the most important advantages to using the UCFA approach is that it does not require a fairness hearing. This is an especially important consideration in this case since the amounts of the settlements, $35,000.00 or less, are not large. Considering the issues and number of parties involved, requiring such evidence would not be a simple matter. The benefits that a settlement offers would be greatly reduced. As the *Comerica* court stated: "The preparation for such 'mini-trials,' and the uncertainty of the outcomes, would discourage parties from settling, and this would be contrary to CERCLA's policy of encouraging early settlement." *Comerica*, 769 F.Supp. at 1411.

More importantly, such a procedure is not necessary under the UCFA approach. As discussed above, the Non–Settlors are not prejudiced by the settlements since their liability is reduced proportionately.

Non–Settlors cite *TGB Inc. v. Bendis,* 811 F.Supp. 596 (D.Kan.1992) for the proposition that a bar order should not be entered before an evidentiary showing is made to the court. This court is not persuaded that the approach used in *TGB* should be applicable to the very different situation in this case.

*TGB* was not a CERCLA case, and there the court determined that the UCATA pro tanto approach was more appropriate given the facts of the case. Finally, the settlement amounts were significantly higher than the amounts at stake in these settlements.

This court is convinced that the UCFA proportionate share approach provides the most efficient and equitable method for reducing Non–Settlors' liability in this case.

### E. Dismissal of All Cross–Claims

The motions before the court ask for an order to dismiss and bar cross-claims *against* the Settlors. As pointed out by the Non–Settlors, if these cross-claims are dismissed and barred the Settlors should not be allowed to continue their actions against the Non–Settlors. The court agrees and finds that the cross-claim bar and dismissal will be mutual. *See American Cyanamid Co. v. King Industries, Inc.,* 814 F.Supp. 215, 218 (D.R.I.1993).

### III. CONCLUSION

In conclusion, the court will approve the settlement agreements between the third party plaintiffs and settling third party defendants. All cross-claims by any remaining third-party defendant against any of the settling third-party defendants arising out of claims asserted by third-party plaintiffs, as well as cross-claims by the settling third-party defendants against any other third-party defendants, will be dismissed with prejudice. Further, all parties in this action will be barred from asserting claims in the future against the settling third-party defendants related to the subject matter of this litigation.

With respect to the remaining claims by third-party plaintiffs against the non-settling third-party defendants, this court adopts the UCFA approach articulated above. Thus, third-party plaintiffs' remaining claims shall be reduced by the amount of each settling parties' equitable share of the liability, if any, as equitable shares are determined at trial.

The final order on this matter will be entered after the court has received copies of all the executed settlement agreements, and

after the settlement funds have been deposited into the registry of the court. At that time, movants should prepare a proposed order for the court's signature.

**IT IS SO ORDERED.**